252 A.2d 359.

RHODE ISLAND HOSPITAL TRUST COMPANY, *Trustee vs.* CHARLES M. PERKINS *et al.*

APRIL 17, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.   This is a petition for certiorari to review the appointment of a guardian ad litem to represent Charles M. Perkins.   The appointment was made in a civil action

brought in the superior court against Perkins and others by Rhode Island Hospital Trust Company acting in its capacity as trustee under an inter vivos revocable trust. Perkins was the settlor of that trust, which insofar as here pertinent, provides generally that the trustee pay him such amounts from either the income or the principal as he might in writing direct. The dispositions provided for following his decease are not material.

In its complaint, the trust company, alleging that it had been put on notice that Perkins was physically and mentally ill, asked for an adjudication of his capacity to manage his estate. In addition, and on the assumption that Perkins would be adjudicated an incompetent, it asked to be instructed whether it should make payments to him from the trust when requested, or to some other person for his benefit, or to his wife for her support and maintenance.

Perkins and his wife, also a defendant, appeared specially and moved to dismiss under rule 12(b)(1) of the superior court rules of civil procedure. Their grounds were twofold: first, that the superior court was without original jurisdiction to pass on competency; and second, that in any event it lacked jurisdiction in the particular case because Perkins was a nonresident and a non-domiciliary who was only temporarily in this state. The motion was in due course heard by a superior court justice who reserved decision when counsel requested leave for an opportunity to file written memoranda. Although we do not have the benefit of a transcript disclosing the arguments made by the movants, we presume they urged that a question of competency is initially triable in the probate court of the city or town where the alleged incompetent resides or has a legal settlement; and that such a case cannot be commenced in the superior court, but can only come there after being heard in and on appeal from a probate court judgment. (G. L. 1956, §§33-15-3, 33-15-8, 33-23-1).

394

While awaiting decision on the motion to dismiss, Charles M. Perkins, Jr., Perkins' son and also a defendant, moved to appoint a guardian ad litem to represent his father in the proceedings. His alleged reason was that his father was " * * * not competent to manage his affairs, including the selection by him of persons to represent him * * * ." A trial justice, other than the one who had heard and reserved decision on the motion to dismiss, granted the motion and appointed a guardian ad litem. Thereupon, Perkins applied for leave to be permitted to file a petition for certiorari. We granted permission, 104 R. I. 722-23, 241 A.2d 305.

We do not reach the substantial question of whether a court should at the request of another party appoint a guardian ad litem to represent a defendant whose competency is a vital issue in the litigation and who is represented by capable counsel. Instead, we decide only that a request for such an appointment will not, at least in ordinary circumstances, be ripe for consideration when a question of jurisdiction over the subject matter of the litigation has been heard and is pending resolution.

When we relate what we decide to these proceedings, we find that the appointment question did not arise until after a trial justice had already exercised his discretion under rule 12(d)[1] of the superior court rules of civil procedure in favor of hearing and deciding the jurisdictional issue and against deferring consideration thereon until the trial on the merits. Presumably, he opted as he did — and we believe correctly so — because the jurisdictional issue was

---

[1]Rule 12 (d) reads:

"The defenses specifically enumerated (1) through (7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before the trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial."

legal rather than factual; because it was determinable without necessity for inquiry either into the facts or other matters relevant to a hearing on the merits; and because the various factors pertinent to the jurisdictional question were not so intertwined and intermeshed with those relating to the merits that it would have been impossible to decide one without at the same time deciding the other. See *Land* v. *Dollar*, 330 U. S. 731, 67 S. Ct. 1009, 91 L. Ed. 1209; *Fireman's Fund Ins. Co.* v. *Railway Express Agency, Inc.*, 253 F.2d 780; *Schramm* v. *Oakes*, 352 F.2d 143; *McBeath* v. *Inter-American Citizens for Decency Committee*, 374 F.2d 359, *cert. denied*, 389 U. S. 896, 88 S. Ct. 216, 19 L. Ed.2d 214.

What gives rise to our present problem is that after the motion to dismiss was heard and pending its resolution the application for the appointment of a guardian ad litem was filed, heard and granted. To appoint or not to appoint at that time — or indeed to take any other action in the proceedings not required in order to prevent irreparable harm — appears to us to have posed a procedural difficulty which was not considered by the trial justice, and which, if it had been considered, should have been resolved in favor of delaying action until the jurisdictional issue was decided. Not until that decision is forthcoming, and then only if determination is in favor of jurisdiction, will the guardian appointed be required to act. And in the interim he will have contributed nothing to a resolution of the jurisdictional issue; neither will he have performed any services for the benefit of his ward which either required doing, or if done, could not just as well be done after the jurisdictional issue is decided. Indeed, from all that appears, the guardian's only essential function since his appointment has been to await word on whether the court has jurisdiction.

If, on the other hand, the ultimate decision is that the

court lacks jurisdiction over the subject matter, then, without having received any corresponding benefit, those who moved to dismiss will have been put to an unnecessary expenditure of time and effort and money in defending against the request for the appointment of a guardian ad litem; the trust or some other party will be exposed to a possible liability for compensating a guardian who will have contributed nothing either to a disposition of the jurisdictional issue or otherwise; and the court will have needlessly used time which could have been devoted to other litigation. In all the circumstances, it seems to us that the court abused its discretion in not deferring action on the guardianship question until after the jurisdictional issue had been decided.

A further difficulty is, of course, that any present decision of ours on the appointment question will, if the motion to dismiss on jurisdictional grounds is ultimately granted, be advisory only since it will have settled for the future a question which is not presently in controversy in the true legal sense. That, of course, is something this court will not do except in those limited instances where the constitution directs. *Industrial National Bank of Rhode Island* v. *Isele,* 101 R. I. 734, 227 A.2d 203.

The only question which remains open is what our mandate shall be. The alternatives are two. We can quash the writ as improvidently granted because the issue it brought to us may by possibility be non-justiciable; or we can quash the record because the trial justice should have deferred appointing a guardian ad litem until after the jurisdictional issue had been resolved. Which will better serve the interests of an orderly as well as an expeditious determination of this action will in the final analysis depend upon what resolution is made of the jurisdictional issue. Without pre-judging that question, it seems to us that orderly procedures will be less disrupted if we adopt

the latter alternative. What we do, however, is without prejudice to the right to re-apply for the appointment of a guardian ad litem if, in the light of future developments, the circumstances warrant.

The petition for certiorari is granted, and the judgment of the superior court appointing a guardian ad litem is quashed without prejudice.

*Edwards & Angell, Richard M. Borod,* for plaintiff-appellee.

*Harry Goldstein, Abraham Goldstein,* for Charles M. Perkins, defendant-appellant.

*Tillinghast, Collins & Tanner, William M. Sloan,* for Charles M. Perkins, Jr., defendant.

252 A.2d 184.

WILLIAM CONN *vs.* ITT AETNA FINANCE COMPANY *et al.*

APRIL 17, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  William Conn, a Rhode Island resident, brought this civil action in the superior court against ITT Aetna Finance Company, a foreign corporation, as well as against three nonresident individuals in their capacities as trustees of the Aetna Profit-Sharing Trust.  Conn was formerly employed by Aetna, and he claims that upon retirement he became entitled to a distributive share of its Profit-Sharing Trust.  Service upon the defendants was obtained by mail addressed to their out-of-state addresses, and in addition, in the case against Aetna a summons was served upon the director of business regulation.  The defendants appeared specially and moved to dismiss for lack of jurisdiction over their respective persons.  After considering what activities the various defendants had been engaged in within this state as the same were disclosed in the discovery procedures, the superior court granted the motion as to the trustees and denied it with respect to Aetna.  Thereupon, plaintiff appealed in the case against the individual defendants; and Aetna, being in doubt as to the correct procedure, filed a notice of cross-appeal and moved for leave to file a petition for a writ of certiorari.  We granted leave to file and directed that the petition for the writ of certiorari be consolidated for hearing with the plaintiff's appeal. 104 R. I. 725, 242 A.2d 694.

When the case was heard before us on oral argument, it appeared that no judgment had been entered in the superior court. In order to avoid having the appeals dismissed be-

400

cause of that deficiency[1], all of the parties joined in an oral motion to remand the papers to the superior court so that a nunc pro tunc judgment might be entered. We granted that motion, remanded the papers, and judgment in due course was entered in the superior court denying Aetna's motion to dismiss, but granting that of the trustees. The papers were then returned to this court.

The basic question is whether by reason of their respective contacts with this state the several defendants subjected themselves to the jurisdiction of its courts and became amenable to suit in this jurisdiction. The controlling statute is G. L. 1956, §9-5-33, as amended. Commonly referred to as a "long-arm statute," it provides in pertinent part that foreign corporations and nonresident individuals having the necessary "minimum contacts" with this state shall be subject to its jurisdiction, and that the courts of this state shall hold such persons "* * * amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States." It further provides that any person thus made subject to the jurisdiction of our courts shall be served with process "* * * in the manner provided by any applicable procedural rule[2] or in the manner prescribed by order of the court in which such action is brought." (footnote added)

Any consideration of our long-arm statute must be within the perspective of what preceded its enactment. This is so because historically the power to render *in personam* judgments depended upon service of process having been made within the borders of the adjudicating jurisdiction.

---

[1]*East Providence Credit Union* v. *Brown,* 104 R. I. 92, 242 A.2d 428, construes rules 58 (a) and 73 (a) of the superior court rules of civil procedure as permitting appeals only from judgments and as requiring a judgment to be set forth on a separate document.

[2]The applicable procedural rules are rules 4 (e) (1) and (2) of the superior court rules of civil procedure which provide generally in pertinent part for mailing a copy of the summons and complaint.

*Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565. "The foundation of jurisdiction," Justice Holmes said, was "physical power." *McDonald* v. *Mabee,* 243 U. S. 90, 91, 37 S. Ct. 343, 61 L. Ed. 608, 609.

With a changing economy, however, and as our means of communication and transportation improved, and as inter-state commercial transactions became more and more frequent, it became necessary, if the courts were to keep pace, to relax the jurisdictional strictures of *Pennoyer* v. *Neff, supra.* What followed with respect to obtaining jurisdiction over foreign corporations — and to some extent similarly as to individuals — was that the United States Supreme Court first "* * * accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations." *McGee* v. *International Life Ins. Co.,* 355 U. S. 220, 222, 78 S. Ct. 199, 200-201, 2 L. Ed.2d 223, 225. Next came the "minimum contacts" concept, the essence of which is that:

> "* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102.

Looking back, it is obvious that the successive changes evidenced a clearly discernible trend "* * * toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." *McGee* v. *International Life Ins. Co., supra* at 222, 78 S. Ct. at 201, 2 L. Ed.2d at 226. Notwithstanding, it would be "* * * a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson* v. *Denckla,* 357 U. S. 235, 251, 78 S. Ct. 1228, 1238, 2 L. Ed.2d 1283, 1296.

It is against the background of this trend that our legislature enacted the long-arm statute in 1960 (P. L. 1960, chap. 124).[3] That act made foreign corporations and non-residents individuals having the necessary "minimum contacts" with this state amenable to the jurisdiction of our courts subject only to whatever limitations might be imposed by the constitution or laws of the United States; in substance and in effect, it empowers our courts "* * * to exercise jurisdiction over foreign corporations up to the constitutional limitation." *Del Sesto* v. *Trans World Airlines, Inc.*, 201 F. Supp. 879, 882. (D. R. I.)

While the statute goes far, but certainly no further than the Supreme Court has gone, neither the statute nor the decisions from which it stems have given us any readily discernible guidelines for determining what are "minimum contacts," or for deciding what is encompassed within "traditional notions of fair play and substantial justice." At best these are illusive phrases. "Traditional notions of fair play and substantial justice" as a measuring rod stands on the same footing as "fundamental fairness;" and "fundamental fairness" as a test "* * * is one on a par with that of shocking the conscience of the Court." Black, J. concurring in *Duncan* v. *Louisiana,* 391 U. S. 145, 169, 88 S. Ct. 1444, 1457, 20 L. Ed.2d 491, 507. Given such an ambulatory grant of power, the task of determining when an exercise of jurisdiction over a non-resident is permissible and when impermissible

[3]Reporting in March 1960 to the then governor of the state upon the matters it desired to bring to his attention and to the attention of the general assembly, the Judicial Council referred to the then recently decided cases of *International Shoe Co.* v. *Washington* and *McGee* v. *International Life Ins. Co.,* both *supra,* and recommended draft legislation whose purpose would be "* * * to make full use of the jurisdiction permitted by these recent decisions and to direct that the Rhode Island Courts hold non-residents amenable to suit in every case except those where the due process of the Federal constitution interferes."

"* * * will require an evolutionary process rather than a quick definitive statement, as these terms involve subjective judgments that must be based upon a multitude of variant factors as they are presented in a multitude of cases. The existence or non-existence of the necessary 'minimum contacts' to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the International Shoe Company case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles." *Velandra* v. *Regie Nationale Des Usines Renault,* 336 F.2d 292, 295.

It is within the frame of this process that we inquire whether Aetna and the trustees had sufficient "minimum contacts" with this state to permit our courts to exercise *in personam* jurisdiction over them.

## THE CASE VS. AETNA

Before ascertaining the sufficiency of Aetna's contacts, there is a threshold question. May Aetna have the validity of its jurisdictional objection determined prior to a final adjudication of the case on its merits? Precedent says no. Under our practice this court does not customarily tolerate interlocutory review. And, except as an incident to a review of a final determination on the merits, it will not pass upon a ruling denying a motion to dismiss based upon an alleged lack of jurisdiction over the person of a defendant. *McMahon* v. *Edelstein,* 75 R. I. 402, 67 A.2d 32. The rationale of that case was that the jurisdictional ruling did not have that degree of finality which the then controlling statute imposed as a precondition to review on a bill of exceptions. Finality in the prescribed sense, we have said, occurs only when there has been a determination upon the merits "* * * which will in due time by operation of law lead to a final judgment in the cause." *Troy* v. *Providence Journal Co.,* 43 R. I. 22, 25, 109 A. 705, 706. We see no reason, nor has any been suggested, for departing from

these principles. It is of no consequence that the method by which review is now obtained in civil actions is by an appeal,[4] rather than by a bill of exceptions as was the case when *McMahon* was decided. Under the new procedure, just as under the old, piecemeal review is generally impermissible and the requirement of finality still persists. *Apollonio* v. *Kenyon*, 101 R. I. 598, 225 A.2d 789. See also, *Industrial National Bank* v. *Colt*, 101 R. I. 488, 224 A.2d 900. Aetna's cross-appeal must therefore be dismissed pro forma.

Just as we have refused to entertain a bill of exceptions which, pending final determination on the merits, seeks review of an interlocutory jurisdictional ruling, so, too, have we refused to review such a ruling on certiorari. *Chew* v. *Superior Court*, 43 R. I. 194, 110 A. 605. The reason for our refusal was that another adequate remedy was available for reviewing the alleged error, viz., the prosecution of a bill of exceptions after the litigation had finally terminated. If we were to hew strictly to that line, a disposition of Aetna's claim that our courts lack jurisdiction in this case would have to await a termination of this litigation on its merits. *Chew*, however, was decided almost 50 years ago, and in the interval the strict requirement that the availability of another adequate remedy for review will defeat an application for certiorari has been relaxed in some instances. Thus, for example, we have elected to exercise our discretion and to grant certiorari, notwithstanding the availability of another remedy, where the

---

[4]Appeals in civil actions are now governed by G. L. 1956, §9-24-1, as amended, which reads:

"Any party aggrieved by a final judgment, decree, or order of the superior court in any civil action, may, within the time prescribed by applicable procedural rules, appeal to the supreme court. Subject to the provisions of applicable procedural rules, such appeal shall be taken by filing a claim of appeal in the office of the clerk of the court from which the appeal is taken."

circumstances have been unusual or exceptional, or in order to prevent unusual hardship, or where not to act might result in irreparable injury or loss. *Rogers* v. *Rogers,* 98 R. I. 263, 201 A.2d 140; *Dyer* v. *Keefe,* 97 R. I. 418, 198 A.2d 159; *Maczuga* v. *American Universal Ins. Co.,* 92 R. I. 76, 166 A.2d 227; *Mancini* v. *Superior Court,* 77 R. I. 262, 75 A.2d 300; *In re Estate of Lucy Wortham James,* 64 R. I. 144, 11 A.2d 289; *Brickle* v. *Quinn,* 63 R. I. 120, 7 A.2d 890; *Conte* v. *Roberts,* 58 R. I. 353, 192 A. 814.

This case, in our judgment, falls into the "unusual circumstances" category. This is not because jurisdiction over the person of a defendant is the issue, for if that were the only consideration *Chew* would control. Rather are we moved because the jurisdictional issue arises within the context of the recently enacted long-arm statute. That statute has not yet been before us, and questions will undoubtedly frequently arise on the extent to which a foreign corporation or a nonresident individual may by virtue of the statute's application become amenable to the process of our courts. To the extent that we can now provide some guidance to the bar and to the courts on the scope of the statute, as well as on its limitations, much future litigation may be avoided and to that extent action on our part at this time certainly seems justified. These are the circumstances which make this case unusual and exceptional. They prompt us to depart from, but not to overrule, the holding in *Chew.* We consider Aetna's case properly here on certiorari and we look now to its contacts with this state.

Aetna is a Delaware corporation with a principal place of business in Missouri. It has no office in this state, nor has it applied for or received any authorization or taken any action to qualify to do business in this state; neither does it maintain a bank account, or own or lease any real or personal property, or advertise or solicit any business, or

offer any goods or services for sale within this state. It does, however, own stock in eight domestic corporations each of which conducts an installment loan business in this state. How much stock it owns, and whether its interest is large or small, or a majority or a minority interest, the record does not tell us.

Even if it owned 100 per cent of stock of each of those corporations, that would not be conclusive or controlling because complete ownership of a subsidiary which does business in the forum state will not alone without more subject the parent to the jurisdiction of the local courts. This was decided by the United States Supreme Court many years ago in *Cannon Mfg. Co.* v. *Cudahy Packing Co.,* 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634. And while there may be more recent holdings of other courts which appear contrary, *Cannon,* although a "pre-minimum contacts" case, still continues in our judgment to represent the better view. See Foster, *Personal Jurisdiction Based on Local Causes of Action,* 1956 Wis. L. Rev. 522 at 563; *Developments in the Law: State-Court Jurisdiction,* 73 Harv. L. Rev. 909 at 932-933.

The plaintiff concedes that Aetna's stock ownership in the subsidiaries without more does not constitute a qualifying minimum contact. He argues, however, that the control which Aetna exercises over the conduct of the affairs of its subsidiaries plus that stock ownership taken together clearly evidence that the corporate separation is unreal and a legal fiction, and that it should therefore be ignored as a device which has been designed to permit Aetna to carry on a business in this state in somebody else's name. If plaintiff can bring his case within the general principles he urges, he may be on sound ground. *Focht* v. *Southwestern Skyways, Inc.,* 220 F. Supp. 441, *aff'd* 336 F.2d 603;

*Curtis Publishing Co.* v. *Cassel,* 302 F.2d 132. See *Velandra* v. *Regie Nationale Des Usines Renault, supra.*[5]

Accepting as tenable the thesis that stock ownership plus control may create amenability, the question remains whether the facts of this case demonstrate that Aetna controlled and regulated the affairs and business of the domestic subsidiaries to a point where the substance of the relationships so contradicts their form as to demand that the fiction be disregarded. It is, of course, true that the subsidiaries regularly and frequently turned over their receipts to Aetna, and that they were required to have their books examined by Aetna's employees as well as to report to Aetna at stated intervals concerning the general status of their accounts. On the other hand, Aetna, responding to a request from plaintiff to admit to specific facts, stated that it does not control the subsidiaries "to a great extent * * * in the actual mechanical conduct of their business."

Obviously, the foregoing factual matter concerning control is abbreviated. Our task would be easier, if we knew the purposes underlying the requirements to account and to remit, and if we were advised in detail on what was contemplated within the term "actual mechanical conduct." We must, however, decide a case, not on an evidentiary frame of reference as we would like to have it, but on the record as it comes to us. When we scrutinize this record within the context of the cases which decide when stock ownership plus control furnish the prerequisite contacts, it is apparent that at best this case falls in the grey area. Perhaps the facts here would be sufficient to justify an exercise of jurisdiction had the agreement forming the basis of this litigation been entered into in this state. That,

---

[5]See also *Regie Nationale Des Usines Renault* v. *Superior Court,* 208 Cal. App.2d 702, 25 Cal. Rptr. 530, where on substantially identical facts involving the same foreign corporation, the California court reached the opposite conclusion.

however, is not the case. Here the cause of action arose out of activities which, as far as we can ascertain, are completely unconnected with this state. That is an influencing consideration. See von Mehren and Trautman: *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv. L. Rev. 1121 at 1149, 1153. Its significance was commented on in *Hanson* v. *Denckla, supra,* where the court, in denying jurisdiction, said "The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." *Id.,* at 251, 78 S. Ct. at 1238, 2 L. Ed.2d at 1296.

Conversely, the court found jurisdiction in *McGee* v. *International Life Ins. Co., supra,* where, factually, the only contact was that the decedent, a California resident, had purchased a life insurance policy in that state from an Arizona company whose obligations were later assumed by the defendant, another Arizona insurer. Neither insurance company, other than for the policy involved, had ever engaged in business in California, or had an office or agent in that state. When the policy matured as a death claim suit was brought in California. The supreme court emphasized the importance of the place where the contract had been entered into and said "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. (cites omitted) The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." *Id.,* at 223, 78 S.Ct. at 201, 2 L. Ed.2d at 226.

We do not, of course, go to the extent of saying that the appropriateness of an exercise of jurisdiction will turn solely on whether or not the litigation arose out of activities which were related to the forum state. Indeed, the inappropriateness of that factor as a conclusive determinant is clearly indicated in *Perkins* v. *Benquet Consolidated Min-*

*ing Co.,* 342 U. S. 437, 72 S. Ct. 413, 96 L. Ed. 485. That it may not be conclusive does not, however, mean that it is not both relevant and significant.

In sum, then, what we have is a suit arising out of an alleged contractual relationship having no connection with this state; and a parent-subsidiary relationship where the stock ownership is something less than complete and where the parent's control over the business and affairs of its subsidiaries is considerably less than total. In our judgment the totality of these contacts did not give our courts *in personam* jurisdiction over Aetna. To hold otherwise would be offensive to "traditional notions of fair play and substantial justice," and would therefore run afoul of the limitations imposed by *International Shoe Co.* v. *Washington, supra.*

### The Case vs. Trustees

The case against the nonresident individual defendants involves the same considerations as that against Aetna; and the inquiry here, just as there, must therefore be whether the facts disclosed in the discovery procedures reveal sufficient "minimum contacts" between the trustees and this state to justify the exercise of jurisdiction by our courts within constitutional limitations.

What plaintiff relies upon to give our courts jurisdiction over the trustees is that certain beneficiaries of the profit-sharing trust, either actual or potential, work and live in this state. That, however, is not enough. *Hanson* v. *Denckla, supra.* The controversy in that case was instituted in Florida and it concerned the validity of a trust established by a Pennsylvania domiciliary who later became domiciled in Florida and then died there. The trustee, a Delaware corporation and an indispensable party to the litigation, was served by mail. It had neither an office nor an agent in Florida; it had never solicited any business there either in person or by mail; it had neither held nor

administered any of the trust assets there; nor had it transacted any other business there. In finding that a suit against the trustee concerning the validity of the trust could not be maintained in Florida, the court held that it was of no consequence that the settlor as well as some of the beneficiaries and appointees under the trust were domiciled in Florida, or that Florida may have been the "center of gravity" in the litigation, or that it may have been the most convenient location for a determination of the controversy. Those facts did not in its opinion constitute "sufficient affiliation" to enable the Florida courts to exercise jurisdiction over the trustee.

*Beals, Sweeney & Jerue, Richard P. Kearns,* for plaintiff.

*Sidney Clifford, Jr.,* for defendants.