**Louis A. ALMEIDA, Executor of the Estate of Louise B. Almeida**

v.

**Anna C. RADOVSKY et al.**

**No. 83–40–Appeal.**

Supreme Court of Rhode Island.

April 1, 1986.

Robert W. Smith, Gunning LaFazia & Gnys, Inc., Providence, for plaintiff.

Seth Bowerman/Kirk Hanson, Hanson Curran & Parks, Mark H. Burnham, Carroll, Kelly & Murphy, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is a medical-malpractice and wrongful-death action against two Massachusetts physicians. The case appears before us on the plaintiff's appeal from a Superior Court judgment granting the defendants' motions to dismiss for lack of personal jurisdiction.

From 1964 through 1979, defendant doctors treated plaintiff's decedent, Louise Almeida, in Fall River, Massachusetts. She traveled to Massachusetts for this medical treatment from her Rhode Island home. The plaintiff alleges that decedent was treated negligently and underwent unnecessary torment, pain, disability and anguish before her death on September 13, 1980. The defendants filed motions to dismiss the case for lack of personal jurisdiction. In ruling on defendants' motions, the trial justice considered affidavits of the two defendants and of plaintiff's attorney in addition to the pleadings. The trial justice granted defendants' motions to dismiss under Rule 12(b)(2) of the Superior Court Rules of Civil Procedure.

The issues before us are: (1) whether the trial justice erred in granting defendants' motions to dismiss on the grounds that neither defendant had sufficient minimum contacts with the State of Rhode Island to permit the exercise of personal jurisdiction, and (2) whether the trial justice erred in not treating defendants' motions to dismiss as motions for summary judgment.

I

DID THE TRIAL JUSTICE ERR IN GRANTING DEFENDANTS' MOTIONS TO DISMISS ON THE GROUNDS THAT NEITHER DEFENDANT HAD SUFFICIENT MINIMUM CONTACTS WITH THE STATE OF RHODE ISLAND FOR AN ASSERTION OF PERSONAL JURISDICTION OVER HIM?

Rhode Island's long-arm statute, G.L. 1956 (1985 Reenactment) § 9–5–33, provides for the exercise of jurisdiction over nonresident individuals and foreign corporations up to constitutional limits. *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 252 A.2d 184 (1969). As a constitutional minimum, a nonresident defendant's contacts with a forum state must be such

that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Roger Williams General Hospital v. Fall River Trust Co.*, 423 A.2d 1384, 1386 (R.I.1981) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)).

■ However minimal the burden of defending in a given foreign tribunal may be, a defendant nevertheless may not be called upon to so defend absent the minimum contacts with that state which are prerequisite to its exercise of power over him. *Lucini v. Mayhew*, 113 R.I. 641, 646, 324 A.2d 663, 666 (1974) (citing *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958)).

The determination of the minimum contacts that will satisfy the requirements of due process depends upon the facts of each particular case. *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 252 A.2d 184 (1969). However, the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Absent a finding that these minimum contacts exist, the due process clause of the Fourteenth Amendment prohibits a state court from rendering a valid personal judgment against the defendant. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Our task in the instant case is to determine whether defendant doctors purposefully availed themselves of the privilege of conducting activities within the State of Rhode Island thereby invoking the benefits and protections of this state's laws together with the concomitant obligations. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The defendant doctors were neither licensed to practice medicine in the State of Rhode Island nor have they ever rendered medical services in this state. All care and treatment of plaintiff was performed exclusively in Massachusetts. The defendants at no time advertised or solicited business in Rhode Island. The defendant citizens of Massachusetts have never maintained any residence, owned any property, or leased any property in Rhode Island. Neither defendant ever paid taxes, held a driver's license, or had a bank account in the State of Rhode Island. The only transaction having a remote relationship to the State of Rhode Island is defendants' Physicians' Agreement and Participating Physician Contract manifesting the signing doctors' agreement to accept Blue Shield or Physicians' Service payments for services rendered to patient subscribers of the Blue Shield or Physicians' Service Plan of Rhode Island. These agreements expressly provide that they have no effect upon the physician/patient relationship. These agreements also specifically refute any inference that the physician is agreeing to treat any patient participating under the Blue Shield or Physicians' Service Plan. The signing physician is free to refuse to treat a patient who subscribes to the Blue Shield or Physicians' Service Plan. Moreover, there is no indication that defendants derived any increase in business with Rhode Islanders as a result of these agreements. And finally, there is no evidence that Blue Shield provided for its subscribers any reference to out-of-state physicians and/or facilities.

*Soares v. Roberts*, 417 F.Supp. 304 (D.R.I.1976), a similar case heard before the Federal District Court of Rhode Island, held that the Rhode Island long-arm statute allowed no in personam jurisdiction over a Massachusetts physician who never lived or practiced medicine in this state. Even in view of the fact that the physician was affiliated with a medical facility which did have sufficient Rhode Island contacts of its own to subject it to jurisdiction here, this state could not assert in personam jurisdiction over the doctor himself.

" 'When one seeks out services which are personal in nature, such as those rendered by attorneys [or] physicians * * * and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment * * *.

" 'The residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or patient travels to receive professional services without having been solicited * * * then the client who originally traveled to seek services apparently not available at home ought to expect he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.' " *Id.* at 306.

In light of the foregoing analysis, we find that defendant doctors' contacts with the State of Rhode Island are insufficient to permit the invocation of in personam jurisdiction over them. There is no showing that defendants purposefully availed themselves of the opportunity to conduct business in Rhode Island or that they consequently derived any substantial benefit from their single contact with this state.

II

DID THE TRIAL JUSTICE ERR IN FAILING TO TREAT DEFENDANTS' MOTIONS TO DISMISS AS MOTIONS FOR SUMMARY JUDGMENT ONCE HE CONSIDERED EVIDENCE OUTSIDE THE PLEADINGS?

█ We answer this question in the negative. A Rule 12(b) motion to dismiss is not transformed into a Rule 56 motion for summary judgment when the basis of the Rule 12(b) motion is a lack of personal jurisdiction. *See* 1 Kent, *R.I. Civ. Prac.* § 56.4 at 420 (1969). As this Rule 12(b) dismissal is not a decision on the merits of the case, we dismiss the action without prejudice.

We accordingly deny the plaintiff's appeal and affirm the judgment below dismissing this action for lack of personal jurisdiction.

WEISBERGER and MURRAY, JJ., did not participate.