CVS CORPORATION, Plaintiff,

v.

TAUBMAN CENTERS, INC., The Taubman Realty Group Limited Partnership, and John Does 1 through 7, Defendants.

No. C.A. 01–352–L.

United States District Court,
D. Rhode Island.

Oct. 7, 2002.

W. Mark Russo, Ferrucci & Russo, P.C., Providence, RI, Robert A. Machson, Robert A. Machson & Assoc., PC, New York City, for Plaintiff.

David A. Wollin, Adler, Pollock & Sheehan, Providence, RI, Nicole J. Anker, Robert M. Dombroff, Bingham, Dana, LLP, Hartford, CT, for Defendants.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on plaintiff's objection to a Report and Recommen-

dation of Magistrate Judge David L. Martin that counsels dismissal of plaintiff's suit for want of personal jurisdiction. As set forth below, the Court adopts the Magistrate Judge's recommended disposition.

## BACKGROUND

Because Magistrate Judge Martin laid out the facts with particularity, this Court will review them only summarily.

CVS Corporation ("CVS" or "Plaintiff") owns and operates a chain of health and beauty aid stores and pharmacies. CVS is a Delaware corporation with a principal place of business in Woonsocket, Rhode Island. Taubman Centers, Inc. ("Taubman, Inc.") is a real estate investment trust which is incorporated in Michigan and which maintains its principal place of business in Bloomfield Hills, Michigan. Taubman, Inc. is the managing partner of the Taubman Realty Group Limited Partnership ("The Taubman Partnership," and collectively, with Taubman, Inc., "Taubman" or "Defendants"), a Michigan limited liability partnership which likewise maintains its principal place of business in Bloomfield Hills, Michigan. All of the partners in the Taubman Partnership are Michigan residents. Taubman manages a number of shopping centers throughout the United States, none of which is in Rhode Island. Taubman owns no property in Rhode Island, has no employees in Rhode Island, and does not maintain a designated agent for service of process in Rhode Island. The record is devoid of any suggestion that Taubman has had any contacts with Rhode Island beyond those associated with the leases that are at the heart of this lawsuit.

The parties' relationship arises out of a series of retail leases (the "Leases") to which neither CVS nor Taubman was a signatory. Taubman served as leasing agent for the landlords of eight properties who leased space in shopping centers to a series of individually incorporated CVS stores. John Does 1 through 7 are unidentified individuals who have ownership interests in those properties. The properties are located in Michigan, Virginia, Maryland, and Connecticut, where the respective stores were also incorporated. Neither the owners/lessors of the properties nor the lessee stores are citizens of Rhode Island. CVS is the corporate parent of the lessee stores, and administers store operations (including operations related to leases) from its corporate headquarters in Rhode Island. From 1969 until 1996, CVS was a subsidiary of the Melville Corporation ("Melville"), an entity headquartered in New York that served as a parent corporation for a number of specialty retailers. In 1996 Melville divested itself of all its holdings except for CVS, and through a corporate restructuring became an indirect subsidiary of CVS. The inception of each of the Leases predates that reorganization.

The record reveals that Taubman's contacts with Rhode Island consisted largely of correspondence related to the Leases, including, inter alia, invoices. In addition, a team of auditors once visited this state on Taubman's behalf to review the sales of one of the lessee stores, whose records CVS maintained in Woonsocket. CVS asserts that it has always administered its leases from Rhode Island, and made all payments to Taubman from its Woonsocket headquarters.

CVS filed a complaint in this Court, founded on diversity jurisdiction, alleging that Taubman overstated certain fees (the "Tenant Charges") owed pursuant to the Leases and denied CVS access to records that would permit CVS to substantiate and quantify that overstatement. Taubman's alleged misfeasance resulted in its improper retention of funds entrusted to it by

CVS. The complaint asserts one count of breach of contract, one count of breach of fiduciary duty, and one count of unjust enrichment.

Taubman moved to dismiss the suit for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). After entertaining oral arguments, Magistrate Judge Martin recommended granting the motion. This Court adopts that disposition and will briefly expand upon the Magistrate Judge's exhaustive analysis.

## DISCUSSION

### I. Standard of Review

■ The district court conducts a de novo review of a magistrate judge's determinations with respect to dispositive pretrial motions. *See* Fed.R.Civ.P. 72(b). The court may accept, reject, or modify the magistrate judge's decision, receive additional evidence from the parties, or return the matter to the magistrate judge with further instructions. *See id.*; *see also* 28 U.S.C. § 636(b)(1). Merely relying on the magistrate judge's report and recommendation is impermissible; the district court must independently review and evaluate the evidence that the magistrate judge received. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

### II. Personal Jurisdiction

#### A. The Burden and Standard of Proof

■ The existence of personal jurisdiction over a party is a necessary predicate to a court exercising authority over that party. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50 (1st Cir.2002). The plaintiff bears the burden of proving that jurisdiction over the defendant is proper. *See id.* The First Circuit Court of Appeals has

suggested that district courts approach jurisdictional inquiries flexibly, and tailor their standards of proof to the circumstances at bar. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 141 (1st Cir.1995)(citing *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671 (1st Cir. 1992)).

■ Magistrate Judge Martin correctly adopted the so-called *prima facie* standard, requiring plaintiff only to proffer credible evidence of the necessary jurisdictional facts. *See Boit,* 967 F.2d at 675. While the plaintiff may not rest on the allegations in its pleadings, once it has provided affirmative evidence of the propriety of jurisdiction the court must accept those facts for purposes of the motion, even if the movant disputes them. *See id.; Daynard,* 290 F.3d at 51. To the extent that the movant offers uncontradicted facts, the court may add those to the jurisdictional stew as well. *See Daynard* at 51.

Two inquiries frame the jurisdictional dispute: 1) whether the forum state's long arm statute has been satisfied, and 2) whether the assertion of jurisdiction satisfies the Fourteenth Amendment's due process clause. *See Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995); *Microfibres, Inc. v. McDevitt–Askew,* 20 F.Supp.2d 316, 320 (D.R.I.1998). Because the Rhode Island Supreme Court has held that the state's long arm statute is co-extensive with federal constitutional limits, only those limits constrain this Court's jurisdiction. *See Conn v. ITT Aetna Finance Co.,* 105 R.I. 397, 402, 252 A.2d 184 (1969); *Levinger v. Matthew Stuart & Co., Inc.,* 676 F.Supp. 437, 439 (D.R.I.1988).

#### B. The Constitutional Analysis

Due process requires only that a nonresident defendant have minimum contacts with the forum state "such that the main-

tenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

 Courts recognize two strains of personal jurisdiction that satisfy the minimum contacts standard. A defendant who maintains systematic and continuous contacts with the forum state may be subject to a court's *general* jurisdiction, whether or not the underlying lawsuit is related to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In the absence of systematic and continuous contacts, a court may exercise *specific* jurisdiction when the underlying action arises from or is related to a significant subset of contacts between the defendant and the forum. *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999).

The Magistrate Judge concluded that general jurisdiction is unavailable here due to the paucity of Taubman's contacts with Rhode Island. CVS did not object to that finding and represented orally to this Court that only specific jurisdiction is in play. It behooved them to do so since specific jurisdiction is the only plausible basis for requiring Taubman's presence here.

 The First Circuit has distilled minimum contacts jurisprudence into a tripartite test for determining the existence vel non of specific jurisdiction. First, the claim at issue must arise from or relate to the defendant's contacts with the forum; next, those contacts must represent a purposeful availment by the defendant of the privilege of conducting activity under the auspices of the forum state's laws; finally, the exercise of jurisdiction over the defendant must be reasonable in light of a variety of factors that bear on the fairness of exposing the defendant to suit in the forum.[1] *See Phillips Exeter Acad.,* 196 F.3d at 288 (1st Cir.1999); *United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1089 (1st Cir.1992).

Notwithstanding the preceding, the minimum contacts analysis is not a mechanical exercise, susceptible to precise formulas, but is instead an ambulatory pursuit. *Cf. Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201, 206 (1st Cir.1994)("Divining personal jurisdiction is 'more an art than a science.'")(quoting *Donatelli v. National Hockey League,* 893 F.2d 459, 468 n. 7 (1st Cir.1990)).

## III. Application

 Applying the instant facts to the foregoing framework, this Court agrees with Magistrate Judge Martin that CVS has failed to satisfy its prima facie burden. Because the Report and Recommendation painstakingly discusses each element of the test, this Court will not recapitulate that analysis, but will instead briefly address some of CVS's contentions.

### A. Relatedness

CVS insists that it has maintained an ongoing tenant-landlord relationship with

---

1. The First Circuit has labeled the relevant criteria in the reasonableness inquiry the "gestalt factors," which consist of: 1)the burden on the defendant of appearing in the forum state, 2) the forum's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4)the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. *See United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992)(citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Taubman for over twenty-five years, during which CVS has consistently administered the leases from its Rhode Island headquarters. Of course, according to the record, neither CVS nor Taubman was in fact landlord or tenant. Niceties of corporate form and contract law aside, however, the existence of that relationship, without more, does not discharge CVS's relatedness burden. *Cf. Phillips Exeter Acad.*, 196 F.3d at 290 ("it is not the relationship itself but the content of the parties' interactions that creates constitutionally significant contacts ... 'the relatedness requirement is not met merely because the plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state.' ") (quoting *Sawtelle*, 70 F.3d at 1389).

Granting CVS the benefit of every inference, as the matter's current posture requires, the parties' actual course of dealing is the only factor that manages to tie—albeit tenuously—CVS's claims to Taubman's Rhode Island contacts. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract *and the parties' actual course of dealing*—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.")(emphasis added).

### B. Purposeful Availment

▇ The purposeful availment requirement ensures that "personal jurisdiction is not premised solely upon a defendant's

'random, isolated, or fortuitous' contacts with the forum state." *See Sawtelle*, 70 F.3d at 1391 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Courts assess the voluntariness of the defendant's contacts and then determine whether suit within the forum as a result of those contacts was foreseeable. *See Phillips Exeter Acad.*, 196 F.3d at 292. A defendant satisfies the requirement by participating in the local economy and availing itself of the benefits and protections of the forum and its laws. *See Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 933–34 (1st Cir.1985).

Plaintiff makes much of the Magistrate Judge's characterization of the decision to administer the leases from Rhode Island as "unilateral." From that characterization CVS evidently infers that the Magistrate Judge found that Taubman did not anticipate having any contact with the state. CVS is chasing its own tail. As an initial matter, nothing in the record suggests that CVS' decision to conduct lease operations from Rhode Island was anything but unilateral. CVS has proffered no evidence nor made any allegation that Taubman somehow dictated or requested that result.[2] Taubman's knowledge that CVS was headquartered in Rhode Island and its acquiescence to the requests to treat with the individual lessees via the corporate parent certainly does not transform the decision into a cooperative one. More importantly, CVS proffered no evidence that Taubman reached out to CVS in Rhode Island in order to solicit its business. *Cf. Phillips Exeter Acad.*, 196 F.3d at 292 ("Without evidence that the defendant actually reached out to the plaintiff's

---

2. In fact, the record demonstrates that Taubman dealt with both CVS and Melville, CVS's New York-based corporate parent until 1996. When CVS requested that notices be sent to its Rhode Island address, whether pursuant to the Leases or otherwise, Taubman appears to have acceded to that request readily.

state of residence to *create* a relationship ... the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.")(emphasis in original).

CVS unavailingly directs this Court to *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir.1996) to support the proposition that Taubman's ongoing correspondence with CVS in Rhode Island could not be considered involuntary, even if CVS initiated the relationship.

In *Nowak*, the widower and children of a woman who drowned in the pool of a Hong Kong hotel brought suit against that hotel in Massachusetts. The hotel had an ongoing business relationship with the plaintiff widower's employer, for whom the plaintiff and his wife traveled to Hong Kong. The employer had negotiated a favorable room rate with the hotel in exchange for a guaranteed number of reservations per year. The hotel had no physical presence outside of Hong Kong, but advertised in publications that had a Massachusetts circulation and corresponded with former guests who were Massachusetts residents. In denying the hotel's motion to dismiss for lack of jurisdiction, the First Circuit held that "the continued correspondence by [the hotel] to Massachusetts does not amount to the kind of unilateral action that makes the forum contacts involuntary." *See Nowak*, 94 F.3d at 717.

Read in isolation the quoted phrase might support CVS. However, as the *Nowak* Court made clear, the hotel's targeted correspondence with Massachusetts residents, through advertisement and direct mail, was specifically intended to draw those residents to the hotel, and to solicit new business. *Id.* By contrast, Taubman's correspondence with CVS regarding the Leases was simply a necessary means of performing under those Leases (or under Taubman's contracts with the landlords,

since, this Court hastens to reiterate, neither party to this action was a signatory to the Leases). The character of the contacts distinguishes *Nowak* from the instant matter.

Furthermore, even if Taubman's interactions with CVS' Rhode Island headquarters were voluntary, they did not constitute activity conducted under the aegis of Rhode Island law so as to make susceptibility to suit foreseeable. *See Phillips Exeter*, 196 F.3d at 292 ("the purposeful availment prong ... investigates whether the defendant benefitted from those contacts in a way that made jurisdiction feasible.")(citing *Ticketmaster-New York, Inc.*, 26 F.3d at 207). Rhode Island law governs none of the Leases. No Rhode Island citizen is party to the Leases. All activity stemming from the Leases concerned Michigan, Virginia, Maryland and Connecticut properties that were occupied by Michigan, Virginia, Maryland and Connecticut residents. So even if Taubman is contractually bound by the Leases (and that conclusion is not self-evident), CVS has yet to show how Taubman has taken advantage of the benefits and protections of Rhode Island law.

CVS cites to this writer's opinions in *Eastland Bank v. Massbank for Savings*, 749 F.Supp. 433 (D.R.I.1990) and *Levinger v. Matthew Stuart & Co., Inc.*, 676 F.Supp. 437 (D.R.I.1988) to sustain its contention that transmission of the allegedly inflated invoices into Rhode Island is in and of itself sufficient to render Taubman amenable to jurisdiction here. The analogies are meritless.

In *Eastland Bank*, the defendant bank's employee came to Rhode Island and allegedly made fraudulent misrepresentations on behalf of the bank, while within the state, to a Rhode Island citizen. Notwithstanding the defendant's physical entrance into the state, this Court specifically prem-

ised its exercise of jurisdiction upon the allegation of fraud, without which jurisdiction would not exist. *See Eastland Bank* at 437. CVS has made no similar allegation. It predicates jurisdiction over Taubman only upon contacts with Rhode Island that were attendant to the general administration of the Leases.

The defendant in *Levinger* had contacts with Rhode Island that extended beyond the sham invoice upon which CVS relies to analogize to the instant matter. That defendant not only directed a "veiled threat" at the plaintiff's Rhode Island tax accountant, but also negotiated and executed a contract with the plaintiff, a Rhode Island firm. Moreover, the contract provided that Rhode Island law would govern the adjudication of any claims arising from breach of the contract. Finally, the defendant corporation's president visited Rhode Island to familiarize himself with the plaintiff's operations. *See Levinger* 676 F.Supp. at 440 The sum of those contacts clearly exceeds Taubman's relationship with the state.

Similarly, the allegation of fraud made by the plaintiff in *Tandy Corp. v. Westfield Management, Inc.,* No. 4:98–CV–642–A (N.D.Tex. Dec. 12, 1998), appended by CVS to its opposition to the motion to dismiss, renders that case inapposite as well. More closely analogous is a case from the Eastern District of Louisiana, which, though not binding, is persuasive. *See My Favorite Year, Inc. v. Kiosk Building Associates, L.P.,* No CIV.A. 90–2155, 1991 WL 33583 (E.D.La. March 4, 1991).

In *Kiosk,* the plaintiff, a Louisiana corporation, had leased retail space in shopping centers in Virginia and Maryland from a Virginia limited partnership. The lessor had no presence in Louisiana and no connections with the state beyond those incidental to the administration of the leas-

es. When the plaintiff sued the lessor in Louisiana for violating the terms of the leases, the lessor moved to dismiss for lack of personal jurisdiction. Granting the motion, the district court found that the activity required to administer the leases was insufficient to satisfy the minimum contacts threshold, writing,

> [i]t is impossible for this Court to fathom how, by virtue of sending invoices or allowing a lessee's books to be kept in Louisiana, it could be said that [defendant] has "purposefully availed" itself of conducting activities within Louisiana or that [defendant] has therefore "invoked the benefits and protections of the laws of Louisiana."

*Id.* at *3.

Similarly, Taubman's contacts with Rhode Island are too attenuated to permit this Court to exercise jurisdiction over it. No Rhode Island resident signed the Leases. None of the leased property is in Rhode Island. Rhode Island law does not govern any of the leases. The single visit to Rhode Island by Taubman's auditors is insufficient to tilt the scales in CVS's favor. *Cf. Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987)(in legal malpractice action, defendant law firm's contacts with the forum state were insufficient to confer jurisdiction even though an attorney from the firm had once visited the forum state during the course of the firm's representation of the plaintiff)(*cited with approval in Sawtelle,* 70 F.3d 1381, 1391).

### C. Reasonableness

Because CVS managed to satisfy only one of the first two prongs of the analysis, and only by the slimmest of margins, consideration of the gestalt factors would be superfluous. *See United Elec. Workers,* 960 F.2d at 1091 n. 11 ("The Gestalt Factors come into play only if the first two

segments of the test for specific jurisdiction have been fulfilled.").

## Summary

As previously noted, the analytical framework for evaluating jurisdictional quarrels should not take on talismanic significance. *Cf. International Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154 ("[T]he criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative."). The underlying goal of the jurisdictional inquiry is to permit a realistic appraisal of the propriety of subjecting defendants to suit in states where their presence is limited. This dispute concerns leases for property located in Michigan, Virginia, Maryland and Connecticut, executed by residents of those states. Common sense, along with the relevant legal analyses performed by the Magistrate Judge and amplified here, demonstrates that this Court should decline to exercise jurisdiction over Taubman.

## Conclusion

For the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation to the extent that it finds Taubman's minimum contacts lacking. Because Taubman's motion to dismiss is granted, consideration of its alternative motion to transfer venue is unnecessary.

The Clerk shall enter judgment forthwith for defendants to the effect that this case is dismissed for lack of personal jurisdiction.

It is so ordered.