B. G. STUTSMAN et al., Plaintiffs,

v.

Joseph C. PATTERSON, Louis S. Goldman, Blood Pressure Monitors, a corporation, Fiscal Concepts Incorporated, Trak Inc., a corporation, Bank of Newport, a California Banking Corporation, Defendants.

BANK OF NEWPORT, a California Banking Corporation, Counter-claimant,

v.

Dr. Robert A. HONKOLA, an Individual, Dr. Richard H. Fettig, an Individual, Dr. Ralph G. Honkola, an Individual, and the First National Bank and Trust Company of Bismarck, a North Dakota Corporation, Counter-defendants.

No. 77–3356–WMB.

United States District Court, C. D. California.

Aug. 14, 1978.

Jerome Zamos, Santa Barbara, Cal., for plaintiffs.

Wm. C. Starrett, II, Marvin Neben, Anaheim, Cal., Frank G. Ker, Cynthia C. LeBow, Robert A. Schlacter, Schwartz, Alschuler & Grossman, Los Angeles, Cal., for defendants.

## MEMORANDUM ORDER

WM. MATTHEW BYRNE, Jr., District Judge.

The original class action complaint alleges a violation of the federal securities laws and common law misrepresentation arising out of a scheme to market certain "distributorships" of coin-operated blood pressure testing machines. Several defendants are named, including Blood Pressure Monitors, a Corporation [hereinafter "BPM"], Fiscal Concepts Incorporated [hereinafter "FCI"], and the Bank of Newport, a California Banking Corporation.

In the original complaint the Bank of Newport is sued only in the third cause of action which concerns letters of credit purportedly assigned to the Bank of Newport by FCI. Plaintiffs seek a declaration that the Bank of Newport is not a holder in due course of these letters of credit and thus is not entitled to draw upon them. Plaintiffs contend that the Bank of Newport "knew or should have known" that the letters of credit were received by FCI in violation of the Securities Act of 1933 and the Securities and Exchange Act of 1934.

The Bank of Newport filed a "Counter-Claim" (more properly considered a Third-Party Complaint) against, among others, the First National Bank and Trust Company of Bismarck [hereinafter "First National"], seeking, inter alia, a declaration that the Bank of Newport is a holder in due course of a particular letter of credit issued by First National to FCI on behalf of three named plaintiffs (the other "counter-defendants"): Drs. Robert A. Honkola, Richard H. Fettig, and Ralph G. Honkola [hereinafter "the Honkola group"], all residents of North Dakota. The Bank of Newport also seeks compensatory damages in the amount specified in the letter of credit ($125,775) for the refusal of First National to honor the letter of credit when presented for payment by the Bank of Newport. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332.

First National has moved to dismiss this Third-Party Complaint on three grounds: (1) that the Court lacks personal jurisdiction over First National; (2) that a national bank can be sued only in the county in which it is established; and (3) that the Bank of Newport has failed to state a claim upon which relief can be granted.

## A. JURISDICTION

■ When the basis for subject matter jurisdiction is diversity of citizenship the power of a federal court to exercise personal jurisdiction over a nonresident defendant turns upon two independent considerations: (1) whether an applicable state rule or statute confers personal jurisdiction over the defendant; and (2) whether the exercise of such jurisdiction comports with constitutional principles of due process. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1286 (9th Cir. 1977). The applicable California statute, Cal.Code Civ. Proc. § 410.10 (West 1973), provides that:

> "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Though the statute could be read to require an inquiry into the due process limits under both the California and United States Constitutions the California courts have expressly held that Cal.Code Civ.Proc. § 410.-10 permits California courts to exercise jurisdiction to the full extent permitted under the United States Constitution. *Data Disc, Inc. v. Systems Technology Associates, Inc., supra,* 557 F.2d at 1286 n. 3; *Michigan National Bank v. Superior Court,* 23 Cal. App.3d 1, 6, 99 Cal.Rptr. 823, 826 (1972); *Belmont Industries, Inc. v. Superior Court,* 31 Cal.App.3d 281, 285, 107 Cal.Rptr. 237, 239–40 (1973); *see Buckeye Boiler Co. v. Superior Court,* 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969). Thus, this court need only consider whether the exercise of personal jurisdiction over First National is in accord with federal constitutional principles of due process.

■ In attempting to define these due process limits upon jurisdiction, the Supreme Court has held to the basic rule enunciated in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that a defendant must have certain minimal contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. In cases in which defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. *Data Disc, Inc. v. Systems Tech. Assoc., Inc., supra,* 557 F.2d at 1287. The United States Supreme Court has stated that the critical inquiry in such a case is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ Bank of Newport asserts three such "minimum contacts" by First National namely (1) that First National negotiated by mail with FCI regarding the terms of the letter of credit; (2) that First National issued and mailed the letter of credit to a California corporation (FCI); and (3) that First National knew that the letter of credit was part of a "substantial business venture" originating and to be performed in California.

The mere fact that First National may have inquired of FCI by mail as to the manner in which the letter of credit was to be used does not show an intent to put itself under the protection of California laws. In *Vencedor Mfg. Co. v. Gougler Industries, Inc.,* 557 F.2d 886 (1st Cir. 1977), the court indicated that such a fact should be given no weight in considering jurisdiction.

■ The fact that the letter was made payable to a California corporation states little more than that the plaintiff is a resident of California. In virtually every case alleging personal jurisdiction over a foreign corporation this will be the case. It is a factor which is entitled to little weight of itself. *See Hill v. Noble Drilling Corp.,* 61 Cal.App.3d 258, 261–62, 132 Cal.Rptr. 154, 156–57 (1976).

The third asserted "minimum contact" is essentially that First National knew that its letter of credit would have substantial effects in California. The recent California

Supreme Court case of *Sibley v. Superior Court,* 16 Cal.3d 442, 128 Cal.Rptr. 34, 546 P.2d 322 (1976),[1] is particularly instructive on this point. In *Sibley,* a partnership, having its principal place of business in California, had entered into a limited partnership with a Georgia corporation to operate a mobile home park in Georgia. The California partnership brought suit in California against the Florida resident who guaranteed the performance of the Georgia corporation. The Court held that the trial court was correct in finding that the action of the Florida guarantor had an effect on California in two respects: first, that the California partnership would probably not have entered into the arrangement without the guarantee and, second, that the guarantor knew that failure of performance by the Georgia corporation would have a further effect in California. Notwithstanding this "effect," the Court ruled that there was no personal jurisdiction over the Florida guarantor, giving these reasons:

> "In the present case, the record fails to disclose that petitioner purposefully availed himself of the privilege of conducting business in California or of the benefits and protections of California laws. Likewise, the record does not indicate that petitioner anticipated that he would derive any economic benefit as a result of his guaranty. Although petitioner may have reasonably forseen that his execution or breach of the guaranty agreement would have some impact in this state, it does not appear that plaintiff Carlsberg assumed any obligations to petitioner which he might have sought to enforce in California." 128 Cal.Rptr. at 37, 546 P.2d at 325.

The case at bar is remarkably similar, factually, to *Sibley.* There is no indication that First National intended to conduct business in California or put itself under the protection of California laws. First National had no reason to anticipate any profits merely because the letter of credit it issued is in California. And there is no "obligation" which First National could seek to enforce in California against Bank of Newport.

Therefore, this court finds that there are not sufficient minimum contacts to justify the exercise of personal jurisdiction over First National in this case.

## B.  VENUE

■  The National Bank Venue Statute, 12 U.S.C. § 94, limits the availability of courts for suits against national banks to state and federal courts sitting in counties in which the national banks are "established." While the language of the statute suggests that its application might be permissive, it is well settled that its provisions are mandatory. *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). This Venue Statute applies to First National which is "established" in North Dakota. Bank of Newport contends that First National waived its protection.

■  The venue provision of 12 U.S.C. § 94 has been held on many occasions to be a privilege personal to the national bank, which the national bank can waive. *Citizens & Southern National Bank v. Bougas,* 434 U.S. 35, 98 S.Ct. 88, 91, 54 L.Ed.2d 218 (1977); *First National Bank of Charlotte v. Morgan,* 132 U.S. 141, 145, 10 S.Ct. 37, 33 L.Ed. 282 (1889). A national bank may waive the privilege in one of three ways: by express declaration, by failure to assert the privilege, or by actions which are inconsistent with the assertion of the privilege. *Northside Iron & Metal Co. v. Dobson & Johnson, Inc.,* 480 F.2d 798 (5th Cir. 1973).

■  Here there has been no express declaration of waiver. Nor has there been a failure to assert the privilege. Nor does the court find that First National has committed any acts which would function as an implied waiver. Since there are not suffi-

---

1. In *Sibley* the California Supreme Court referred to United States Supreme Court cases and California cases interchangeably in interpreting Cal.Code Civ.Proc. § 410.10. 128 Cal. Rptr. at 36, 546 P.2d 322.

cient intentional contacts with California to put First National under the jurisdiction of this court, those same facts cannot support the theory that the bank has waived its venue privilege. The fact that First National sought and received an indemnity agreement from the Honkola group before issuing the letter of credit does not imply that the bank was conscious that it would be sued in California, as suggested by the Bank of Newport.

Therefore, even if this court had found that it could assert jurisdiction over First National on the facts presented, the Third-Party Complaint would still be dismissed under the National Bank Venue Statute.

### C. CAUSE OF ACTION

Because of the holdings of this court expressed in parts A and B of this Order, the court does not reach the question of whether or not the Third-Party Complaint states a cause of action upon which relief can be granted and the court expresses no opinion on this question.

It therefore being found that this court lacks personal jurisdiction over First National and that the National Bank Venue Statute prohibits this court from hearing this cause of action,

IT IS HEREBY ORDERED that this Third-Party Complaint ("Counterclaim") as against First National Bank and Trust Company of Bismarck be dismissed, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2) and Rule 12(b)(3).