Minkin **CHANDLER,**
**Plaintiff–Appellant,**

v.

**BARCLAYS BANK PLC, International Steel Marketing, Gamille Beshay, Kamil Beshay, Defendants,**

**Banque Du Caire Barclays International, S.A.E. Cairo, Defendant–Appellee.**

No. 89–1155.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1990.

Decided March 22, 1990.

Rehearing and Rehearing En Banc Denied May 4, 1990.

John C. Kaplansky (argued), Southfield, Mich., for Minkin Chandler.

Donald S. Young, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant Barclays Bank PLC.

Kenneth J. McIntyre, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for Banque Du Caire Barclays Intern., S.A.E. Cairo.

Before KENNEDY and BOGGS, Circuit Judges, and HULL, Chief District Judge.[*]

KENNEDY, Circuit Judge.

Appellant Minkin Chandler filed this action on January 19, 1988, against Barclays Bank PLC (Barclays), an English banking corporation with offices in New York; International Steel Marketing (International Steel), an Egyptian corporation; Gamille and Kamil Beshay, Egyptian citizens and principals of International Steel; and appellee Banque du Caire Barclays International S.A.E. Cairo (Banque du Caire), an Egyptian banking corporation. Appellant alleged (1) that payment under a letter of credit issued by Banque du Caire was wrongfully denied, and (2) that defendants Barclays, International Steel, the Beshays, and Banque du Caire conspired to deny payment on the letter of credit in order to allow International Steel to extort a reduction in the price it had agreed to pay for the steel.

Banque du Caire moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(2), arguing that the court lacked personal jurisdiction over it. The District Court agreed, and dismissed Banque du Caire from the action. The court also rejected appellant's contention that a "national contacts" analysis should be applied in determining whether jurisdiction over Banque du Caire was proper in Michigan. Finally, the court determined that there was no agency relationship between Banque du Caire and the other parties, thereby rejecting appellant's argument that Banque du Caire subjected itself to the court's jurisdiction through the actions of its agent(s). Minkin Chandler appeals these three determinations. The other defendants have been dismissed. We AFFIRM the decision of the District Court.

---

[*] The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee.

Appellant Minkin Chandler is a Detroit steel supplier. In October of 1986, International Steel entered into a contract to purchase steel from appellant. Payment for the steel was to be made by a letter of credit. To guarantee that a letter of credit would be obtained, International Steel was initially to obtain a letter of guarantee in the amount of $100,000 upon which Minkin Chandler could demand payment from a confirming bank in New York (Barclays) in the event that International Steel did not obtain the promised letter of credit. Following the execution of the contract, International Steel approached Banque du Caire in Cairo, Egypt, and applied for a letter of guarantee. Banque du Caire then established a letter of guarantee in favor of Minkin Chandler in Cairo. Barclays in New York confirmed the letter of guarantee.

After the issuance of the letter of guarantee, International Steel again approached Banque du Caire in Cairo and requested that the bank establish a letter of credit on its behalf in favor of Minkin Chandler. Banque du Caire subsequently issued the letter of credit to International Steel, in the amount of about $1,630,000.00. The letter of credit provided, among other things, that Minkin Chandler could present documents to Barclays in New York, which would act as a confirming bank. In late July of 1987, a representative of Minkin Chandler traveled to New York and presented documents to Barclays, seeking payment under the letter of credit from Barclays. At this time, Banque du Caire was closed due to an Egyptian holiday.

Appellant claims that on August 3, 1987, Barclays denied payment, informing appellant that Barclays had been advised not to make payment under the letter of credit by a "very, very urgent" telefax of Monday, August 3, 1987 from International Steel to Barclays noting two "major discrepancies" in Minkin Chandler's documents. The telefax requested Barclays to withhold payment until after it "check[ed] with our Bank [Banque du Caire]." Minkin Chandler could not reach Banque du Caire, however, during the week of August 3 because of the Egyptian holiday.

On August 4, 1987, Barclays telefaxed to Minkin Chandler a ten-point list of discrepancies, and outlined its reasons for declining payment. When Banque du Caire resumed business following the holiday, it too discovered discrepancies in Minkin Chandler's documents and advised Barclays on August 10, 1987 not to make payment to appellant.

Appellant first argues that there were sufficient contacts between Banque du Caire and the state of Michigan for the court to assert jurisdiction pursuant to the Michigan long-arm statute. Appellant asserts that the letter of credit, in addition to naming a Michigan resident as beneficiary, was sent to and relied upon in Michigan and caused numerous transactions to occur in Michigan.

The Michigan long-arm statute provides, in part:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich.Comp.Laws Ann. § 600.715 (West 1981).

■ This limited personal jurisdiction provision extends the state's jurisdiction to the limits permitted by due process require-

ments. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298, (6th Cir.1989) ("Generally speaking, ... '[t]he Michigan statute confers on the state courts the maximum scope of personal jurisdiction permitted by the due process clause of the Fourteenth Amendment'.") (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981)); *Sifers v. Horen*, 385 Mich. 195, 198–200, 188 N.W.2d 623 (1971). Due process mandates that jurisdiction be exercised only if Banque du Caire had sufficient "minimum contact" with the state of Michigan, so that summoning the bank to Michigan would not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

This Court has adopted a three-part test for determining whether personal jurisdiction can properly be exercised over an out-of-state defendant:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

Second, the cause of action must arise from the defendant's activities there.

Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377, 379 (6th Cir. 1978) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968)). The plaintiff below has the burden of establishing jurisdiction under this test. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

We disagree with appellant's argument that Banque du Caire purposefully availed itself of the privilege of acting or causing a consequence to occur in Michigan. Several courts have held that the mere issuance of a letter of credit naming a resident of a particular state as beneficiary does not subject the issuing bank to the jurisdiction of that state. For example, the court in *Occidental Fire & Casualty Co. v. Continental Illinois Nat'l Bank*, 689 F.Supp. 564, 568 (E.D.N.C.1988) stated that "courts which have analyzed the issuance of letters of credit for jurisdictional purposes have come to a uniform conclusion. This conclusion is that jurisdiction cannot be properly based on the issuance of a letter of credit."

This opinion cited a Third Circuit case reaching the same conclusion. The Third Circuit stated:

We do not think that by issuing a letter of credit for a Rhode Island customer, calling for its performance in Rhode Island, the bank can be said to have subjected itself to the adjudicatory authority of Pennsylvania with respect to its *obligations under the letter of credit* solely because the beneficiary was a Pennsylvania corporate resident. We agree with the District Court that subjecting the bank to the jurisdiction of a Pennsylvania forum would offend traditional notions of fair play and substantial justice.

*Empire Abrasive Equip., Inc. v. H.H. Watson, Inc.*, 567 F.2d 554, 558 (3d Cir.1977).

The Ninth and Tenth Circuits have reached similar conclusions. In *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550 (9th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), the Ninth Circuit decided a case similar to the one before us. In *Baker*, Associated Banking Corp. (ABC) issued an irrevocable letter of credit in favor of Baker, an Ohio corporation doing business in California. The proceeds of the letter were assigned to Interquip Corp., another Ohio corporation doing business in California. Interquip negotiated with Dura–Tire and Rubber Industries, a Philippine corporation, for the sale of equipment to Dura–Tire in the Philippines. All of these negotiations were conducted in San Francisco. Dura–Tire caused ABC to issue the irrevocable letter of credit for payment of the equipment.

All negotiations between Dura–Tire and ABC were conducted in the Philippines. The letter of credit originally called for a single shipment and payment in five installments, to be advised through Manufacturers Hanover Trust Company of New York. The letter was amended to permit partial shipments. The goods were shipped and the first installment was paid by Manufacturers Hanover. Baker then assigned the proceeds of the letter of credit to Interquip and notified ABC of the assignment. Interquip presented the letter of credit for payment at a California bank. The letter was dishonored, purportedly because the equipment did not conform to contract terms.

ABC maintained correspondent banking relationships with six California banks. ABC had non-interest-bearing accounts with those banks for the purpose of processing letters of credit and facilitating the transfer of funds between California and the Philippines. ABC's maintenance of its accounts in these six banks was its sole contact with California.

The California long-arm statute, like the Michigan statute applicable in the case before this Court, has been interpreted to extend to the outer limits of due process. The Ninth Circuit found that ABC had purposefully invoked the protection of California law in order to reap the benefit of the very type of transaction sued upon, for ABC's assets in California represented one aspect of correspondent banking relationships undertaken by ABC for the express purpose of providing letter of credit services to the bank's Philippine clients in their business dealings with American entities. The court further found that the sales contract underlying the letter of credit and on which the dishonor apparently was based was thoroughly connected to California. The court nonetheless found:

> The existence of correspondent relationships with the six California banks did not put these banks on any special footing with regard to this letter of credit. While Baker could have negotiated the letter of credit through any bank of its choice, any negotiating bank would have forwarded the draft to the paying bank in New York for reimbursement.... ABC's selection of a New York correspondent as the advising and paying bank confined the place of payment to New York, where the draft was later dishonored....
>
> [W]e think on this record that plaintiffs have failed to show that ABC could reasonably have expected the issuance or negotiation of this letter to have effects in California that would make it fair to require it to defend this suit [in California].

*Id.* at 553.

The facts in the case before us are nearly identical to those in *Baker.* In fact, fewer contacts exist in the present case, for the letter of credit was neither presented nor dishonored in the state where appellant is arguing jurisdiction exists, as was the case in *Baker.* Furthermore, Banque du Caire does not possess assets in Michigan similar to those possessed by ABC in California.

In *Leney v. Plum Grove Bank,* 670 F.2d 878 (10th Cir.1982), the Tenth Circuit decided a similar case. Leney was the designated beneficiary in a letter of credit issued by an Illinois Bank. Illinois resident Sheldon Moss, the Bank's customer and the designated account party, procured the letter of credit from the Illinois bank at its Illinois location. The Bank mailed the letter to California resident Leney's attorney in Colorado. According to the letter's terms, Leney would receive payment upon presenting to the Illinois bank the letter of credit accompanied by documents showing Leney had sold to a designated Colorado corporation his interests in certain real and personal property. Leney submitted the letter of credit to his bank in California, which transmitted a sight draft signed by Leney to the Illinois bank for payment. The Illinois bank refused to pay on the sight draft, stating that it would not honor the letter of credit because of the California bank's improper endorsement and the absence of necessary documents required by the letter of credit.

The court found that asserting jurisdiction in the federal district court in Colorado

over the Illinois bank violated due process. The court noted that "[o]ther than mailing the letter of credit to a Colorado attorney, the bank's only connection to Colorado was its probable knowledge that the letter was going to be used in the sale of Colorado property to a Colorado corporation." *Id.* at 880. Although this case differs from the one before us because Leney was a California resident whereas Minkin Chandler is a resident of the state where it is arguing jurisdiction exists,[1] the case is factually similar in most other respects.

As in *Leney*, the record in the present case does not indicate that the parties expected any dispute over the letter of credit to be resolved in Michigan, for appellant did not ask for a letter of credit on a Michigan bank or for confirmation by a Michigan bank. *Id.* The court in *Leney* also noted that "Leney had no direct dealings with the Bank with respect to the letter's issuance. The Bank did nothing in Colorado. Its Illinois customer obtained the letter of credit from the Bank in Illinois." *Id.* Similarly, Minkin Chandler had no direct dealings with Banque du Caire with respect to the letter's issuance. Banque du Caire did nothing in Michigan. Its Egyptian customer obtained the letter of credit from the bank in Egypt.

The court in *Leney* noted that the trial court below relied upon the Colorado Supreme Court case of *Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425 (1975). The *Leney* court stated, however, "[W]hile we are bound by the Colorado Supreme Court's interpretation of its own statute, we are not bound by its interpretations of the Due Process Clause of the United States Constitution.... We must independently determine whether asserting jurisdiction in the federal district court in Colorado over the Illinois bank violates due process." *Leney,* 670 F.2d at 879–80. The Tenth Circuit then proceeded to disagree with the Colorado Supreme Court's due process analysis.

In *Van Schaack,* the Colorado Supreme Court upheld jurisdiction over a Kansas bank that had issued a letter of credit on behalf of its Kansas customer to a Colorado beneficiary in connection with obtaining an extension of time on a Colorado real estate transaction. The court found that no due process violation existed because: (1) the letter of credit induced conduct in Colorado, for the plaintiff relied upon the letter in extending the contract; (2) the cause of action arose from the consequences in Colorado of the cancellation of the letter; and (3) the letter of credit was issued in conjunction with a Colorado real estate transaction having a substantial connection with Colorado. *Van Schaack,* 189 Colo. at 147, 538 P.2d 425.

We agree with the Tenth Circuit's statement in *Leney* that " '[t]he bank's obligation under the letter of credit is independent of the underlying sales contract.' " *Leney,* 670 F.2d at 881 (quoting *Baker,* 592 F.2d at 553). Consequently, our due process analysis of the case before us, like that of the Tenth Circuit in *Leney,* differs from that of the Colorado Supreme Court in *Van Schaack.*

Our decision is further buttressed by the reasoning of the court in *Stutsman v. Patterson,* 457 F.Supp. 189 (C.D.Calif.1978). In that case, the court found that: (1) the fact that a bank issuing a letter of credit may have inquired of a beneficiary by mail as to the manner in which the letter of credit was to be used does not show an intent on the part of the bank to put itself under the protection of the laws of the state in which the beneficiary resides; (2) the fact that the letter was made payable to a California corporation states little more than that the plaintiff is a resident of California, and is thus entitled to little weight; and (3) the issuing bank had no reason to anticipate any profits merely because the letter of credit was issued in California.

---

**1.** With respect to this point, the fact that the letter of credit was made payable to a Michigan corporation is entitled to little weight by itself, for "[i]n virtually every case alleging personal jurisdiction over a foreign corporation this will be the case." *Stutsman v. Patterson,* 457 F.Supp. 189, 191 (C.D.Cal.1978).

Appellant next argues that the court below had jurisdiction over Banque du Caire because of its contacts with the United States as a nation. The District Court noted that all of the cases that it examined allowing for a "national contacts" or "aggregate contacts" approach were cases, unlike the one before us, involving a federal statute. The court agreed with those courts that have rejected the national contacts approach, citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290 (3d Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985) and *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 418 (9th Cir.1977). The court in *Max Daetwyler* stated:

Although we do not decide the issue, we can appreciate the argument that a federal statute, prescribing nationwide *personal* jurisdiction on the basis of a defendant's aggregated national contacts, might itself be constitutional. We are, however, unaware of any federal statute which presently authorizes district courts to [find] personal jurisdiction upon such aggregated contacts.

. . . . .

Even those few courts which have accepted the national contacts theory have ultimately grounded jurisdiction upon satisfaction of a state long-arm statute.

. . . . .

We conclude that in the absence of some provision within the patent laws authorizing nationwide service of process, the district court's power to exercise in personam jurisdiction is limited by Fed.R. Civ.P. 4(e) and by the Pennsylvania long-arm statute, whose incorporation by reference, Rule 4(e) requires.

*Max Daetwyler*, 762 F.2d at 295, 297 (emphasis in original, citations omitted).

Further, the District Court interpreted the United States Supreme Court case of *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987), as rejecting the "national contacts" approach. The Court in *Omni* recognized that under Federal Rule of Civil Procedure 4(e), a federal court looks to either a federal statute or to the state long-arm statute in order to determine whether a defendant is amenable to service of process, a prerequisite to its exercise of personal jurisdiction. The *Omni* case involved a federal statute, the Commodity Exchange Act, but the Court found that this statute did not contain an implied provision for nationwide service of process in a private cause of action. In so finding, the Court noted, "[I]t would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it." *Id.* at 106, 108 S.Ct. at 411.

Appellee argues the Court's decision in *Omni* not to address the constitutionality of the aggregate contacts theory was due to the fact that the doctrine has no application where no federal statute with an authorized service of process vehicle is at issue. The Ninth Circuit has agreed with this interpretation of *Omni*. *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir.1989) ("Indeed, a recent Supreme Court decision implies that a national service provision is a necessary prerequisite for a court even to consider a national contacts approach."). We agree with appellee and the Ninth Circuit on this point. The Supreme Court's statement in *Omni* that it had "no occasion" to consider the constitutional issues raised by the national contacts theory leads to no other conclusion but that the theory is applicable solely in conjunction with a statutory national service provision. Because the present case is a diversity action and as such does not involve a federal statute with a national service provision, we find that the District Court properly rejected the national contacts approach.

Finally, appellant argues that Banque du Caire and Barclays operated as agents of International Steel and the Beshays, and as agents of each other, and that under the theory of implied agency, the acts of each defendant are attributable to each other. The implied agency arose, appellant alleges, when Barclays received instruction not to pay on the documents from International Steel and Banque du Caire. Appellant alleges that the defendants agreed to act individually and in combina-

tion to breach the sales agreement and the obligations under the letter of credit and the confirmation, committed acts in furtherance of that agreement, and that this conspiracy comprised an implied agency arrangement. The District Court disagreed. The court stated that the rule permitting agency to serve as a basis for service to be effected upon a principal under the long-arm statute "means that if a principal allows an agent to act in a jurisdiction, that the principal subjects itself to the jurisdiction of that Court. That agency involves control, general control over that particular agent." Joint App. at 215. *See Avery v. American Honda Motor Car Co.*, 120 Mich.App. 222, 225, 327 N.W.2d 447 (1982). The District Court then noted, "[T]he best we have here is one party gave a direction to another party. The requirements of control are clearly not present to establish any type of agency relationship." Joint App. at 215.

As a confirming bank, Barclays acted pursuant to its own independent contractual relationship with Minkin Chandler.[2] Barclays undertook an independent legal duty to make payment under the letter of credit if conforming documents were presented by Minkin Chandler. In fact, appellant's complaint acknowledges that: (1) Barclays charged appellant a separate fee in return for its services as confirming bank; (2) Barclays failed to exercise its obligation, independent of and in addition to the obligation of any other bank; and (3) Barclays breached its engagement and contract of confirmation, thus indicating that Barclays indeed had an independent contractual obligation. Because "[a]n agent is one who acts on behalf of another," *Lincoln v. Fairfield-Nobel Co.*, 76 Mich.App.

514, 519, 257 N.W.2d 148 (1977), appellant's argument that Barclays was an agent is not persuasive.[3]

Because we agree with the District Court's determinations that: (1) the court lacked personal jurisdiction over Banque du Caire; (2) a national contacts approach is not appropriate in this case; and (3) Banque du Caire did not subject itself to the court's jurisdiction through the actions of an agent, we AFFIRM the decision of the District Court.

---

2. *See Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir.1970) ("Chase is a confirming bank ... and accordingly has all the duties and rights of a confirming bank.... Thus Chase added its own liability to that of the issuing bank, undertook to honor the drafts and was directly obligated as though it were the letter's issuer to the extent of its confirmation.").

3. Insofar as appellant alleges that jurisdiction exists based upon the existence of a conspiracy, we find that these allegations are unsupported and therefore do not constitute sufficient contacts to justify an exercise of personal jurisdic-

tion. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981) ("[T]otally unsupported allegations of conspiracy cannot constitute sufficient contacts ... to justify an exercise of personal jurisdiction.... Similarly, *the allegation of conspiratorial activities with tortious consequences in the forum state is insufficient to support jurisdiction under the long arm statute in the absence of some minimal factual showing of ... participation in the conspiracy.*").