**DUPONT TIRE SERVICE CENTER, INC.**

v.

**NORTH STONINGTON AUTO–TRUCK PLAZA, INC. d/b/a Republic Auto Truck Plaza.**

Civ. A. No. 87–0088 L.

United States District Court, D. Rhode Island, First Division.

May 8, 1987.

Steven A. Gordon, Gordon & Levitt, Providence, R.I., for plaintiff.

Michael J. Auger, Cohen and Weinstein, Hartford, Conn., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The issue presented to this Court for resolution is whether a single trip by an executive officer of an out-of-state corporation constitutes sufficient contact with the forum state so as to enable a federal district court to obtain personal jurisdiction over the corporation without violating its right to due process of law.

North Stonington Auto Truck Plaza, Inc. (NSAT) is a Connecticut corporation located in North Stonington, Connecticut, a small town located approximately ten miles west of Rhode Island's western border. NSAT maintains that its offices are located only in Connecticut and that it does not advertise, solicit business, maintain bank accounts, or maintain agents in the state of Rhode Island. Dupont Tire Service Center, Inc. (Dupont) is a corporation organized under the laws of the state of Rhode Island with its principal place of business in Warren, Rhode Island.

On October 9, 1986, Frederick Cohen, President of defendant NSAT was in the state of Rhode Island on a matter allegedly unrelated to the business of his corporation. While in this state, Mr. Cohen claims that he unexpectedly encountered Anthony W. Dupont, Jr., President of the plaintiff corporation. The two executive officers "met" or proceeded to meet at plaintiff's place of business where they discussed the sale and/or delivery of certain goods consisting primarily of truck tires, tools, equipment and rims. After these negotiations had ended, the parties orally agreed that NSAT would purchase a designated amount of tires and other goods for an agreed upon purchase price.

On the following day, October 10, 1986, Dupont delivered the goods and tires to defendant's premises in Connecticut in accordance with the terms of the agreement. Plaintiff claims that the contract price, however, failed to include the cost of ninety-one (91) tires which were actually delivered to defendant. Plaintiff alleges that it offered to take the tires back or be paid an additional amount but defendant declined to do either.

On February 19, 1987, Dupont filed a complaint in this Court alleging that NSAT breached the contract of October 9, 1986. In addition, the complaint seeks recovery from NSAT on theories of unjust enrichment and fraud.

On March 10, 1987, NSAT moved this Court to dismiss Dupont's action under Rule 12(b)(2) of the Federal Rules of Civil Procedure. NSAT claimed that it "lacks minimum contacts with the forum state, and therefore the court has no jurisdiction over defendant." Two days later, Dupont objected to NSAT's motion to dismiss. Oral argument was then heard on April 9, 1987, and the matter is now in order for decision.

In order for a federal district court to obtain personal jurisdiction over a defendant, a two-step process must be undertaken. First, the requirements of the long-arm statute of the state in which the federal district court is sitting must be satisfied. Secondly, exercise of the long-arm statute must satisfy the due process clause of the Fourteenth Amendment to the United States Constitution.

With respect to the former step, Rhode Island's long-arm statute provides:

Every foreign corporation, every individual not a resident of this state ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island ... in every case not contrary to the provisions of the constitution or laws of the United States.

R.I.Gen.Laws § 9–5–33 (1956) (1985 Reenactment).

This statute, in turn, has been construed to mean that Rhode Island courts may exercise jurisdiction "up to the constitutional limitation." *Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969). Since the statutory limitation is equivalent to that contained in the Constitution, inquiry focuses upon the second of the two steps.

▮ In determining whether exercise of a state's long-arm statute violates due process, the Supreme Court has established a three part analysis. First one must determine whether the jurisdiction exercised is specific or general. Then, depending upon the type of jurisdiction that is exercised, one must examine the nature of the defendant's contacts with the forum state. Finally, if the defendant has "minimum contacts" with the forum state, the Court must still inquire whether it is "unreasonable" for the Court to exercise personal jurisdiction.

▮ Whether a court's jurisdiction is specific or general depends upon the relationship between plaintiff's claims and defendant's contacts with the forum state. Where plaintiff's claims "arise out of" or are "directly related" to defendant's contacts with the forum state, a court exercises specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). Conversely, where plaintiff's claims do not arise out of or are not directly related to defendant's contacts with the forum state, a court exercises general jurisdiction. *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9.

The Supreme Court has never defined the terms "arise out of" or "directly related to." These terms, however, have been applied by the Court where a contract forms the basis of plaintiff's action and the circumstances of the contract's formation and performance constitute the basis of defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985).

Following the application in *Burger King*, there is little question in the present case that NSAT's contacts with Rhode Island "arise out of" or "are directly related to" plaintiff's claims. Plaintiff filed suit against defendant on three theories: "breach of contract," "unjust enrichment," and "fraud." Each of these theories is premised upon actions which defendant allegedly took regarding the formation or performance of the contract. The actions allegedly taken by defendant, in turn, directly touch the State of Rhode Island.

Any fraud, for instance, which might have induced plaintiff to enter into the contract would have occurred in Rhode Island where the parties negotiated and reached the agreement itself. Any breach committed or unjust enrichment received by NSAT would have had its impact in Rhode Island where payment for the goods reached Dupont. Given the close relationship between Dupont's claims and the contacts of NSAT in Rhode Island, the Court concludes that the former "directly arose from" or "are related to" the latter. Analysis of the nature of defendant's contacts with Rhode Island, therefore, is predicated upon the Court's assumption of specific jurisdiction in this case.

In determining the nature of defendant's contacts with the forum state, the Supreme Court has indicated that such contacts must come about by *"an action of defendant purposefully directed toward the forum state."* *Asahi Metal Ind. Co. v. Superior Court of California*, — U.S. —, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (plurality opinion) (emphasis in the original). Whether a defendant purposefully directs an action toward the forum state in the context of a contract dispute, in turn,

requires evaluation of three considerations. They are:

(1) The parties' prior negotiations.

(2) The terms of the contract itself.

(3) The parties actual and contemplated course of dealing.

*Burger King Corp. v. Rudzewicz,* 471 U.S. at 479, 105 S.Ct. at 2186.

Applied to the present case, the first of these considerations indicates that defendant's conduct was purposefully directed at the forum state, Rhode Island. The president of NSAT visited Rhode Island allegedly for reasons unrelated to the business of the corporation, but while in Rhode Island Mr. Cohen visited plaintiff's principal place of business in the town of Warren and entered into negotiations with the president of Dupont. At this point, NSAT's executive officer was targeting a particular corporation with a business proposition. Moreover, Mr. Cohen was patently aware that this corporation had its principal place of business in Rhode Island and was a Rhode Island corporation. It follows that during the negotiation stage of the agreement NSAT's conduct was purposefully directed at Rhode Island.

When the negotiations came to fruition the two parties orally agreed that NSAT would purchase tires and other goods from Dupont in consideration for an ascertained purchase price. In addition, they agreed that Dupont would provide immediate delivery to NSAT's principal place of business in Connecticut. While there is no evidence of any contract term indicating which jurisdiction's law the parties agreed would govern any potential dispute between them, *cf. Burger King,* 471 U.S. at 482, 105 S.Ct. at 2187 (where such terms were evidence of defendant's purposeful connection with the forum state), there is no dispute that the entire agreement was formulated while both parties were physically in the state of Rhode Island. Although this fact does not automatically establish sufficient minimum contacts, it may be a contributing factor in assessing whether defendant purposefully directed its conduct towards the forum state. *Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185. This is all the more true

where defendant through an officer physically enters the forum state and reaches the agreement there. *See, Beaver Builders v. Schnip Bldg.,* 622 F.Supp. 1051, 1055 (D.Mass.1985) (mem.). That NSAT consumated the agreement while physically in Rhode Island, again, strongly suggests that NSAT purposefully directed its conduct towards the state of Rhode Island.

■ The final consideration, the parties' contemplated and actual course of dealing, also supports this conclusion. Although performance and payment of the parties' obligations under the contract physically occurred at defendant's premises in Connecticut, the contemplated course of dealing of the parties touched a far broader geographical area.

This was a business transaction between two corporations from different states. When NSAT made payment in Connecticut at time of delivery of the goods, it knew that the money would be forwarded to Dupont in Rhode Island. Moreover, by participating in an exchange of this kind, NSAT also anticipated receiving a benefit from Dupont in Rhode Island. When Dupont in fact received payment for its goods, these contemplated contacts with Rhode Island were effectuated. That NSAT thus both contemplated and in fact profited from dealing with a business located in Rhode Island supports the conclusion that NSAT intentionally directed its business conduct towards the state in which that business was located. This conclusion, along with the similar results reached by analyses of the first two considerations, necessitates a finding that NSAT possesses minimum contacts with the state of Rhode Island for purposes of this case.

Having concluded that defendant possesses minimum contacts with the forum state, the question arises whether the Court's exercise of personal jurisdiction is unreasonable. *Asahi Metal Ind.,* 107 S.Ct. at 1034; *cf. Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185 (to defeat jurisdiction, a defendant, who purposefully directs his activities at the forum state, must present a "compelling" case of some other considerations which would render jurisdiction un-

reasonable). In deciding a case under this standard, the Supreme Court has held that a district court must consider the following five factors:

(1) The burden on the defendant.

(2) The interests of the forum state.

(3) Plaintiff's interests in obtaining relief.

(4) The interstate judicial system's interest in obtaining the most efficient resolution of controversies.

(5) The shared interest of the several states in furthering fundamental substantive social policies.

*Asahi Metal Ind.,* 107 S.Ct. at 1034 (the Court unanimously agreed on this part of the opinion).

The first, third, fourth and fifth of these factors have no bearing upon the reasonableness of this Court's assertion of jurisdiction. The burden on NSAT in litigating this case in Rhode Island is slight given the proximity between Connecticut and Rhode Island. For the same reason, Dupont could litigate this case as easily in Connecticut as in Rhode Island.

Nor can one envision how it would be more efficient to litigate this case in another forum rather than in the state of Rhode Island. Given the proximity of the parties, witnesses and counsel to one another, resolution of this case is hardly likely to be expedited were it to be litigated in the only other conceivable forum, Connecticut. Finally, no states other than Connecticut and Rhode Island have an interest in the substantive social policies underlying this contractual dispute. The contract in question here touches only Rhode Island and Connecticut and was arrived at by parties whose businesses were oriented primarily towards these two states.

As to the second factor, this indicates (if anything) that assertion of jurisdiction by this Court is reasonable. Rhode Island, obviously, has a strong interest in protecting its resident corporations from any unfair or fraudulent business practices of out-of-state corporations. The strength of this interest, along with the more neutral character of the other four factors leads one to conclude that assertion of jurisdiction by

this Court would not be unreasonable. The minimum contacts analysis already presented, then, must stand.

For all the above reasons, defendant's motion to dismiss for lack of jurisdiction over the person is denied.

*It is so Ordered.*