**EASTLAND BANK**

v.

**MASSBANK FOR SAVINGS.**

Civ. A. No. 90–0319 L.

United States District Court, D. Rhode Island.

Nov. 7, 1990.

William R. Grimm of Hinckley, Allen, Snyder & Comen, Providence, R.I., for plaintiff.

Raymond J. Brassard, Rackemann, Sawyer & Brewster, Boston, Mass., Robert D. Fine, Licht & Semenoff, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motion of defendant Massbank for Savings ("Massbank") to dismiss the complaint of Eastland Bank ("Eastland") for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Because this Court concludes that it has specific in personam jurisdiction over Massbank, the motion is denied.

## I. BACKGROUND

On June 26, 1987, Massbank, a Massachusetts banking corporation, entered into a Construction Loan Agreement ("Agreement") with Lane Homes, Inc. ("Lane Homes") a Massachusetts development company. Under the terms of the Agreement, Massbank agreed to loan $8,005,-

000.00 to Lane Homes to enable it to develop a condominium project on forty-five acres in Amesbury, Massachusetts. In return, Lane Homes was obligated either to allow Massbank to retain five percent of all sums paid under the Agreement or to secure a $216,500.00 letter of credit designating Massbank as the beneficiary.

Lane Homes elected to secure the letter of credit. Massbank alleges that Lane Homes had complete discretion in choosing an issuing bank, provided that the bank was strong. When Lane Homes inquired if a letter of credit from Eastland would be acceptable, Massbank acceded. Eastland is a Rhode Island banking corporation with its principal place of business in Woonsocket, Rhode Island.

On June 26, 1987, at the request of Lane Homes, Eastland issued a $216,500.00 letter of credit for the benefit of Massbank. The letter of credit commenced on the day of issuance and terminated on June 26, 1990.

In order for Massbank to call on the letter of credit, it was required to submit to Eastland a written statement signed by a person who represented himself or herself to be a Massbank official. The statement needed to certify the following:

(1) That Lane Homes, Inc. is in default under a certain Construction Loan Agreement dated June 26, 1987 by and between MASSBANK for Savings and Lane Homes, Inc. by virtue of the failure of Lane Homes, Inc. to complete the Project (as defined in said Construction Loan Agreement) in accordance with the requirements of said Construction Loan Agreement.

(2) That the amount of the accompanying draft represents the sum required to cure such default.

In March of 1989, Lane Homes filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts.[1] Thereafter, the Amesbury project grounded to a halt and Massbank eventually foreclosed. After going into possession, Mass-

bank resumed construction and incurred costs greater than the amount of the letter of credit.

On June 14, 1990 a Massbank representative contacted Eastland to inform it that Massbank would make a demand under the letter on the next day. On June 15, 1990, a Massbank official traveled to Eastland's offices in Woonsocket, Rhode Island. There, the Massbank official submitted a written demand (a "Sight Draft") for payment of the total amount of the letter. The official also submitted a Certification asserting that Lane Homes was in default and that the amount of the Sight Draft would be sufficient to cure that default. Eastland refused to honor the Sight Draft and sent written notification to this effect on June 19 and 20, 1990.

Eastland refused to honor the Sight Draft because it alleged that the Certification contained a fraudulent misrepresentation. Eastland contends that Massbank's statement that the "amount of the accompanying draft represents the sum required to cure such default" is fraudulent because the default of Lane Homes under the Agreement exceeds the amount of the letter of credit. Eastland contends that $216,500.00 will not "cure the default" and that Massbank knew this when it submitted the Sight Draft.

On June 20, 1990, Eastland filed a complaint in the Providence County Superior Court seeking declaratory relief.

The next day, a Massbank official submitted a second Sight Draft and Certification. This Certification was the same as the first except that it included the following additional language:

Although the failure of Lane Homes, Inc. to complete the project in accordance with the requirements of said Construction Loan Agreement has resulted in a default thereunder in excess of the amount of the above-referenced Letter of Credit, the accompanying draft represents the maximum amount available un-

---

1. Andrew J. Lane, the principal figure behind Lane Homes filed for bankruptcy simultaneously. Mr. Lane had provided Eastland with a

guarantee as security for its issuance of the letter of credit.

der such Letter of Credit towards the cure of such default.

Eastland refused to honor the second Sight Draft because the Certification contained the same alleged misrepresentation as the first and because the additional language constituted "surplus language not permitted by the Letter of Credit." In addition Eastland amended its complaint for declaratory relief to reference the alleged fraudulent misrepresentation and surplus language in the second Certification.

On July 2, 1990 Massbank removed this matter to this Court. Ten days later Massbank filed the instant motion. A hearing was held on September 14, 1990 and the motion was taken under advisement. It is now in order for decision.

## II. DISCUSSION

■■■■ This Court has personal jurisdiction over any nonresident defendant properly served under the Rhode Island long-arm statute as long as the due process clause of the United States Constitution is not offended. Because the Rhode Island Supreme Court has held that the Rhode Island long-arm statute reaches to the full breadth of the Fourteenth Amendment, *See Conn v. ITT Aetna Finance Co.*, 105 R.I. 397, 402, 252 A.2d 184, 186 (1969), the only necessary inquiry is whether this Court can constitutionally exercise personal jurisdiction over Massbank.

■■■ The Supreme Court has held that "due process requires only that in order to subject a defendant to a judgement *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339,

343, 85 L.Ed. 278 (1940)). A minimum contacts analysis may be conducted by determining whether either specific jurisdiction or general jurisdiction is present. "[A] federal district court exercises specific jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.' Conversely, where plaintiff's claims do not arise out of or are not directly related to defendant's contacts with the forum state, a court exercises general jurisdiction." *Petroleum Servs. Holdings, Inc. v. Mobil Exploration & Producing Servs., Inc.*, 680 F.Supp. 492, 495 (D.R.I.1988) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)), *aff'd*, 887 F.2d 259 (1st Cir.1989).

General jurisdiction can only be exercised where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 415, 104 S.Ct. at 1872. Plaintiff does not contend that this Court has personal jurisdiction over Massbank on the basis of general jurisdiction. Indeed, the doctrine of general jurisdiction is inapplicable here.[2]

However, the doctrine of specific jurisdiction is applicable to this case. In order for Massbank to be subject to this Court's personal jurisdiction under that doctrine, the elements of the following three part test must be satisfied:

(1) Plaintiff's claim must arise out of or be directly related to defendant's contacts with the forum state.

(2) Defendant's conduct must have been purposefully directed towards the forum state.

(3) Assertion of jurisdiction by the Court must be reasonable under the circumstances.

*Levinger v. Matthew Stuart & Co.*, 676 F.Supp. 437, 439 (D.R.I.1988).

---

2. Massbank's principal place of business is in Massachusetts, and all of its branches are located there. In addition 99.98% of its deposits are from non-Rhode Island residents. It has no offices, employees or agents in Rhode Island, no outstanding mortgage on any Rhode Island real estate, and neither owns nor leases property in

Rhode Island. Furthermore, it spends no money advertising in Rhode Island and is not listed in any Rhode Island telephone book. *See Russo v. Sea World of Florida, Inc.*, 709 F.Supp. 39, 42 (D.R.I.1989) (discussing the "continuous and systematic" contacts requirement).

A. Relationship Between the Claim and Forum State

It is uncontested that Massbank's only contacts with Rhode Island consist of an official twice travelling here to submit documents under the letter of credit. Plaintiff's claims exist only because of the activity that occurred during those trips. Plaintiff alleges that Massbank's intentional submission of nonconforming documents was fraudulent. Massbank contends that the submissions in Rhode Island were necessary to take the "formal legal step" of calling on the letter of credit.

■ This Court is not called upon at this time to determine the merits of this dispute. However, the question of jurisdiction is enmeshed with the merits of this case. If Massbank's efforts to call on the letter were not fraudulent, it should not be subject to this Court's personal jurisdiction. It is clear that mere status as a beneficiary under a letter of credit is insufficient to subject the beneficiary to personal jurisdiction in the issuer's state. *See infra* Part II, B. However, plaintiff's allegations concern more than Massbank's status as a beneficiary; the allegations concern certain conduct of Massbank admittedly taken in Rhode Island.

■ This Court confronted a similar situation where the "jurisdictional basis [was] not only intertwined with the merits of the case, [but went] to the very heart of" plaintiff's complaint in *Thompson Trading Ltd. v. Allied Lyons PLC*, 123 F.R.D. 417, 424 (D.R.I.1989). There, this Court held it was " 'preferable that this [jurisdictional] determination be made at trial.' " *Id.* (quoting *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285–86 n. 2 (9th Cir.1977)). Therefore, this Court will apply the general rule and accept the allegations in plaintiff's complaint as true. *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014, *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). Thus, there is no question that the present suit arises out of Massbank's contacts with Rhode Island.

B. Conduct Purposefully Directed

The second prong of the test for specific jurisdiction requires an analysis of whether Massbank purposefully directed its conduct towards Rhode Island. Lane Homes, not Massbank, sought out Eastland and entered into the letter of credit transaction. Although Massbank did not seek out Eastland, it gave its approval to Lane Homes to enter into the transaction once Lane Homes arranged the deal. In addition, a Massbank official twice entered Rhode Island in efforts to call on the letter. The allegedly fraudulent demands for payment under the letter satisfy the purposeful direction of conduct requirement.

■ Massbank contends that it "did not purposefully direct any of its activities at Eastland." This argument misstates the constitutional requirement on which the second prong of the test for specific jurisdiction rests. The purposeful direction requirement is concerned with Massbank's activity vis-a-vis Rhode Island, not its activity with any one of Rhode Island's residents. The Supreme Court first announced this principle in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There, the Court stated, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protection of its laws." 357 U.S. at 253, 78 S.Ct. at 1240. *See also Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (father located in New York did not purposefully avail himself of benefits and protections of California by buying an airline ticket for his daughter and placing her on a plane to California upon her request that she be permitted to live with her mother).

■ Massbank here did purposefully direct activity at Rhode Island. Its alleged fraudulent calls on a letter of credit issued by a Rhode Island bank certainly constitute "activity." Further, there is no doubt that this activity was performed intentionally. Nevertheless, Massbank argues that its lack of prior negotiations and the absence of a contemplated long-term relationship

with Eastland make jurisdiction improper under the principles articulated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Massbank's reliance on *Burger King* is misplaced. The Supreme Court has clearly recognized that the type of acts necessary to satisfy due process differ depending on "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk*, 444 U.S. 320, 328, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980).

*Burger King* addresses the question of when a defendant's contractual relationship with a resident of the forum state can satisfy minimum contacts.[3] There the Supreme Court pointed out that a personal jurisdiction analysis depends on such factors as "prior negotiations and contemplated future consequences, along with terms of the contract and the parties actual course of dealing." 471 U.S. at 479, 105 S.Ct. at 2185. *See also McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (upholding jurisdiction on grounds that due process was satisfied because "the suit was based on a contract which had substantial connection with [the forum] State").

Massbank's reliance on *Burger King* assumes plaintiff's suit concerns a contractual relationship arising from Massbank's status as a beneficiary and plaintiff's status as an issuing bank. However, a letter of credit is not a contract. Indeed under Article Five of the Uniform Commercial Code, a letter of credit is defined as a "written engagement" by an "issuer" with a "customer" to honor demands for payments by a "beneficiary" which comply with the terms of the credit. U.C.C. § 5–103(1) (1978). *See Amoco Oil Co. v.*

*First Bank & Trust Co.*, 759 S.W.2d 877 (Mo.Ct.App.1988) ("The [Uniform Commercial Code] sets up a theoretical framework for dealing with letters of credit independent of the law of contracts."). *See also Data Gen. Corp. v. Citizens Nat'l Bank*, 502 F.Supp. 776, 784 (D.Conn.1980) (stating that "letters of credit are not formal contracts"). *Contra Burger King Corp.*, 471 U.S. at 464, 105 S.Ct. at 2177–78 (franchise agreement at issue). Thus, it is inappropriate to compare Massbank's status as a beneficiary under a letter of credit with a franchisee's status under a contract with Burger King. *See generally* J. White & R. Summers, *Uniform Commercial Code* 7 (3d ed. 1988) ("[T]here has been a tendency to analogize the letter of credit to other legal arrangements, and this has led to error.")

Several courts have analyzed the personal jurisdiction ramifications of the relationship between an issuing bank and a beneficiary under a letter of credit. One basic legal conclusion has emerged: "jurisdiction cannot be properly based on the issuance of a letter of credit." *Occidental Fire & Casualty Co. v. Continental Ill. Nat'l Bank & Trust Co.*, 689 F.Supp. 564 (E.D.N.C.1988). Therefore, this Court can not exercise personal jurisdiction over Massbank merely because it is a beneficiary under a letter of credit issued by a Rhode Island bank. However, this Court is able to exercise personal jurisdiction over Massbank because of its alleged fraudulent conduct in this State.

It has been decided that the "mere issuance of a letter of credit naming a resident of a particular state as a beneficiary does not subject the issuing bank to the jurisdiction of that state." *Chandler v.*

---

**3.** The Supreme Court has also refined the purposeful availment doctrine in the context of products liability litigation. In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) the Court discussed the foreseeability element of due process analysis in relation to placing a product in the stream of commerce. It stated that a nonresident defendant "should reasonably anticipate being haled into" a foreign court when it has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum state.'"

444 U.S. at 297, 100 S.Ct. at 567 (quoting *Hanson*, 357 U.S. at 235, 78 S.Ct. at 1228). In *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality of the Supreme Court decided that merely placing an item in the stream of commerce did not subject a nonresident defendant to a foreign court's personal jurisdiction. Rather, a plaintiff must show the defendant had an "intent or purpose to serve the market in the forum state." 480 U.S. at 112, 107 S.Ct. at 1032.

*Barclays Bank PLC,* 898 F.2d 1148, 1151 (6th Cir.1990). *Accord Pacific Reliant Indus., Inc. v. Amerika Samoa Bank,* 901 F.2d 735 (9th Cir.1990); *Empire Abrasive Equip. Corp. v. H.H. Watson, Inc.,* 567 F.2d 554, 558 (3d Cir.1977). Massbank could not have established specific jurisdiction over Eastland in a Massachusetts court merely because Eastland issued a letter of credit to a customer naming a Massachusetts resident as the beneficiary. Just as surely, jurisdiction over beneficiary Massbank can not be predicated solely on the fact that this state is the home of the issuing bank. In fact, the Ninth Circuit reached this same conclusion in *Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.,* 757 F.2d 1058 (9th Cir. 1985). In that case, plaintiff who had entered into a letter of credit arrangement with the Los Angeles branch of Chase Bank International, brought suit in California to prevent the beneficiary defendant, a Kuwaiti bank, from drawing on the letter. The Ninth Circuit held that the bank's status as a beneficiary was insufficient to subject it to suit where the issuing bank was located.

However, the Ninth Circuit held that the Kuwaiti bank's allegedly fraudulent demand for payment satisfied the requirement that the nonresident defendant "do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum." *Id.* at 1062. The Ninth Circuit concluded that the Kuwaiti bank's alleged inducement of reliance was a " 'sufficient act within California to satisfy the requirements of minimum contacts where the cause of action arises out of that inducement.' " *Id.* at 1064 (quoting *Data Disc, Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280, 1288 (9th Cir.1977)).

Massbank argues that its attempted calls on the letter can not subject it to this Court's specific jurisdiction; that would make a "virtue out of a necessity." With respect to the resulting "virtue," the limited nature of jurisdiction that this Court has determined should be exercised must be understood. Jurisdiction over Massbank is only proper because the complaint alleges Massbank committed fraudulent misrepresentations in Rhode Island. If it later appears Massbank did not make fraudulent misrepresentations, then this Court will have no basis for exercising personal jurisdiction over Massbank.

With respect to the "necessity" of Massbank's conduct, this Court remains unmoved. Massbank, as the source of the development money Lane Homes needed, was in a good position to structure all elements of the transaction. Massbank could have insisted that it be allowed to retain a percentage of all sums paid under the agreement. Instead it gave Lane Homes the option of securing a letter of credit, an option Lane Homes elected to pursue. Massbank could have explicitly stated what language it expected to appear in a letter of credit. Instead, its silence resulted in the underlying dispute over whether the letter's language is ambiguous. Massbank could have restricted the universe of banks offering letters of credit to just those with principal offices in Massachusetts. Instead it imposed only one condition: that the issuing bank be "strong." When Lane Homes asked if Eastland would be satisfactory, Massbank agreed.

Massbank could have insisted that it did not want to have to travel to Rhode Island to call on the letter. It could have required that it be allowed to draw on a confirming bank[4] in Massachusetts. *See Chandler,* 898 F.2d at 1150 (noting the structure of a letter of credit transaction in which United States resident beneficiary could call upon letter at New York confirming bank as opposed to Egyptian issuing bank). A confirming bank is often employed in these circumstances:

**4.** A confirming bank is a "bank which engages either that it will itself honor a credit already issued by another bank or that such a credit will be honored by the issuer or a third bank." U.C.C. § 5–103(1)(f) (1978). By confirming a letter of credit, a confirming bank "becomes directly obligated on the credit to the extent of its confirmation as though it were its issuer and acquires the rights of an issuer." U.C.C. § 5–107(2) (1978).

In some instances, the beneficiary of a letter of credit will not be satisfied with the engagement of the issuing bank, particularly where the issuing bank is located in a foreign jurisdiction or is not well known to the beneficiary. The beneficiary may insist on also having the engagement of a local bank or other bank in the near vicinity of the beneficiary which has a substantial reputation.

W. Hawkland, *Uniform Commercial Code Series* § 5–103:07 (1986). Most likely Massbank did not seek an engagement from a confirming bank in Massachusetts because it did not consider the location of Eastland to be an unreasonable burden.

C. Reasonableness

■ The final prong of the test for specific jurisdiction requires an analysis of whether the exercise of specific jurisdiction in this instance would be reasonable. This Court will refuse to exercise jurisdiction that is otherwise proper only upon a showing by defendant of a "compelling case" why the exercise of jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185. Five factors must be considered by a district court in determining reasonableness:

(1) The burden on the defendant.

(2) The interests of the forum state.

(3) Plaintiff's interests in obtaining relief.

(4) The interstate judicial system's interest in obtaining the most efficient resolution of controversies.

(5) The shared interest of the several states in furthering fundamental substantive social policies.

*Dupont Tire Serv. Center, Inc. v. North Stonington Auto–Truck Plaza, Inc.*, 659 F.Supp. 861, 865 (D.R.I.1987) (citing *Asahi Metal Ind. Co.*, 480 U.S. at 113, 107 S.Ct. at 1032–33).

■ Applying the five pertinent factors to the facts of this matter, it is clear that jurisdiction can be reasonably exercised here. There is little burden on Massbank because of the proximity of Rhode Island and Massachusetts. *Id. Contra Paccar Int'l, Inc.*, 757 F.2d at 1065 (holding that the exercise of jurisdiction would be unreasonable because of the "heavy burden" the Kuwaiti defendant would have in defending an action in California). With respect to the second factor, "Rhode Island, obviously, has a strong interest in protecting its resident corporations from any unfair or fraudulent business practices of out-of-state corporations." *Dupont Tire Serv. Center, Inc.*, 659 F.Supp. at 865. Third, Eastland has a strong interest in obtaining relief. Fourth, it would not be "more efficient to litigate this case in another forum rather than in the state of Rhode Island. Given the proximity of the parties, witnesses and counsel to one another, resolution of this case is hardly likely to be expedited were it to be litigated in the only other conceivable forum, [Massachusetts]." *Id.* Massbank contends that all the pertinent underlying evidence is located in Massachusetts. However, the location of the defunct condominium project and the bankruptcy proceedings of Lane Homes in Massachusetts has little to do with the underlying dispute in this case: whether Massbank's activity was fraudulent. Finally, no other state besides Massachusetts and Rhode Island is concerned with the resolution of this dispute. In short, Massbank has failed to show a compelling case why the exercise of jurisdiction would be unreasonable.

III. CONCLUSION

For all the above reasons, Massbank's motion to dismiss for lack of personal jurisdiction hereby is denied.

*It is so Ordered.*