**EASTLAND BANK**

v.

**MASSBANK FOR SAVINGS.**

**Civ. A. No. 90–319L.**

United States District Court,
D. Rhode Island.

June 18, 1991.

30

William Grimm, Hinckley, Allen, Snyder & Comen, Providence, R.I., for plaintiff.

Raymond Brassard, Rackemann, Sawyer & Brewster, Boston, Mass., Robert D. Fine, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motions of defendant Massbank for Savings ("Massbank") for summary judgment. Massbank, the beneficiary of a letter of credit issued by plaintiff Eastland Bank ("Eastland"), requests entry of summary judgment not only on Eastland's amended complaint for declaratory relief, but also on all four of its counterclaims seeking a monetary award.

Eastland's amended complaint seeks a declaratory judgment to the effect that it has no duty to honor two drafts made by Massbank on the letter of credit. Eastland contends that Massbank's first draft was

accompanied by a certificate that contained a fraudulent misrepresentation. Eastland argues that Massbank's second draft was accompanied by a certificate containing the same alleged fraudulent misrepresentation supplemented with impermissible "surplus language." Massbank counterclaims alleging that Eastland's two refusals to pay on the letter amount to wrongful dishonor under the Massachusetts version of the Uniform Commercial Code, Chapter 106, Section 5–114 of the Massachusetts General Laws (counts one and two)[1]; Eastland's refusals to pay constitute a breach of contract (count three); and Eastland's actions amount to unfair and deceptive trade practices in violation of Chapter 93A of the Massachusetts General Laws (count four).

For the reasons set forth below, the Court grants Massbank's motion for summary judgment on Eastland's amended complaint. The Court also grants Massbank's motions for summary judgment on counts one and two of its counterclaims. However, the Court denies Massbank's motions for summary judgment on counts three and four of its counterclaims. With respect to those two counts, the Court determines that Eastland is entitled to summary judgment even though it has not made a motion for such a ruling under Rule 56 of the Federal Rules of Civil Procedure.

## I. BACKGROUND

This Court has previously set out the facts of this controversy in an earlier opinion on a jurisdictional issue. *See Eastland Bank v. Massbank for Savs.*, 749 F.Supp. 433 (D.R.I.1990). A brief factual summary is also provided here.

Massbank and Lane Homes, Inc. ("Lane Homes") are parties to a $8,005,000.00 construction loan agreement for the development of a condominium project. As part of that agreement, Massbank required Lane Homes to either secure a letter of credit or permit Massbank to retain five percent of all sums paid under the agreement. Lane Homes elected to secure the letter of credit. It arranged for Eastland to issue the letter of credit, and for Massbank to be listed as the beneficiary. As part of its agreement with Lane Homes to issue the letter of credit in the amount of $216,500.00, Eastland secured a personal guarantee from Andrew J. Lane, the sole shareholder of Lane Homes.

The terms of the letter of credit authorize Massbank to call on it by presenting a draft to Eastland and a written statement certifying:

(1) That Lane Homes, Inc. is in default under a certain Construction Loan Agreement dated June 26, 1987 by and between MASSBANK for Savings and Lane Homes, Inc. by virtue of the failure of Lane Homes, Inc. to complete the Project (as defined in said Construction Loan Agreement) in accordance with the requirements of said Construction Loan Agreement.

(2) That the amount of the accompanying draft represents the sum required to cure such default.

On March 24, 1989, both Lane Homes and Andrew J. Lane voluntarily filed for bankruptcy.[2] Later that year, on October 11, 1989, Massbank notified Lane Homes that it was in default under the loan agreement in part because of its "failure to continue to prosecute construction of the project continuously so as to complete units in a timely manner." Both parties here concede that Lane Homes failed to complete the project and was in default under the loan agreement.

In January of 1990, Massbank was granted relief from the automatic stay by the bankruptcy court and took possession of

---

**1.** The letter of credit expressly states that it "shall be governed by the laws of the Commonwealth of Massachusetts."

**2.** The significance of Mr. Lane's bankruptcy filing is not lost on the Court. *Eastland Bank,* 749 F.Supp. at 435 n. 1. Eastland will obviously not be able to turn to his personal guarantee to recapture money spent honoring the letter of credit. *See* J. White & R. Summers, *Uniform Commercial Code* 29 (3d ed. 1988) ("Courts are ... often asked to decide bitterly fought contests over words in the letter or in presented documents without mention of the true reason for issuer's refusal to pay.").

the property. Between April and June, it spent in excess of $300,000.00 to complete partially constructed units and repair defective units.

In June of 1990, Massbank twice attempted to call on the letter of credit. On June 15, pursuant to the letter of credit's requirements, Massbank submitted to Eastland a sight draft and a certificate stating that Lane Homes was in default and that $216,500.00 represented the "sum required to cure such default." Eastland gave notice of its refusal to honor the draft on June 19, 1990. It contended that because Lane Home's default *exceeded* $216,500.00, Massbank's certification that $216,500.00 would "cure" the default was fraudulent.

On June 21, Massbank again attempted to call on the letter of credit. It again submitted to Eastland a sight draft and a certificate stating that Lane Homes was in default and that $216,500.00 represented the "sum required to cure such default." The certificate also included the following paragraph:

> Although the failure of Lane Homes, Inc. to complete the project in accordance with the requirements of said Construction Loan Agreement has resulted in a default thereunder in excess of the amount of the above-referenced Letter of Credit, the accompanying draft represents the maximum amount available under such Letter of Credit towards the cure of such default.

Eastland refused to honor the second draft. It alleged that the certificate contained the same alleged misrepresentation as the first and that the additional paragraph was "surplus language" not within the terms of the letter of credit.

## II. DISCUSSION

None of the above facts are in dispute, nor are there any other material facts contested by the parties. Viewing all inferences in the light most favorable to the nonmoving party, *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987), summary judgment will be appropriate only when "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro.R. 56. Massbank's

motions for summary judgment will be examined under that standard.

### A. *Eastland's Duty to Honor Massbank's Calls*

■■■ It is well-settled that a letter of credit is independent of the underlying contract, such as the loan agreement here. Mass.Gen.L. ch. 106, § 5–114(1). *See Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir.1990). Normally, when a beneficiary submits documents that facially conform to the conditions required for calling on the letter, the issuer must pay. The only exceptions to this rule are found in Section 5–114(2), which permits the issuer's customer to enjoin payment under certain "narrowly circumscribe[d]" circumstances. *Ground Air Transfer*, 899 F.2d at 1272. Section 5–114(2) states:

> Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document ... is forged or fraudulent or there is fraud in the transaction:
>
> > (a) the issuer must honor the draft ... if honor is demanded by ... a holder in due course ...; and
> >
> > (b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

Mass.Gen.L. ch. 106, § 5–114(2).

Even when the customer has not sought an injunction, as here, the issuer, " 'is still privileged to comply with its customer's plea of beneficiary fraud' " as grounds for nonpayment. *Offshore Trading Co. v. Citizens Nat'l Bank*, 650 F.Supp. 1487, 1492 (D.Kan.1987) (quoting B. Clark, *The Law of Bank Deposits, Collections, and Credit Cards*, ¶ 8.8[1][a] (1986 Cumulative Supp. No. 2)). Of course, this privilege is only effective if the customer would have a valid claim of fraud.

Thus, Eastland's decision not to honor the two drafts is permissible under Section 5–114(2) only in three situations: (1) if Massbank has submitted a forged document; (2) if Massbank has submitted a fraudulent document; or (3) if there has been fraud in the transaction. The first situation clearly is not applicable here. There have been no allegations that Massbank presented any forged documents when it called on the letter.

The other two situations are implicated here. Eastland contends that Massbank submitted a "fraudulent document" when it twice presented a certificate stating that $216,500.00 represented "the sum required to cure such default." Eastland argues that because Lane Homes's default under the loan agreement is substantially higher than $216,500.00, it would be impossible for that amount to "cure" the default. Furthermore, Eastland contends that Massbank knew that $216,500.00 would not "cure" Lane Homes's default when it submitted its two sight drafts. Eastland argues that these facts justify its dishonor under the "fraudulent document" exception to payment. Furthermore, Eastland emphasizes that it is only relying on the "fraudulent document" provision of Section 5–114(2); it maintains that it is not alleging that there was fraud in the underlying transaction between Massbank and Lane Homes. However, as will be seen, Eastland's argument requires this Court to closely examine both the "fraudulent document" and "fraud in the transaction" provisions.

 A document is fraudulent when it falsely certifies compliance with an important prerequisite to calling on the letter of credit. *Emery–Waterhouse Co. v. Rhode Island Hosp. Trust Nat'l Bank*, 757 F.2d 399, 404–05 (1st Cir.1985). In addition, in order for a document to be fraudulent, the beneficiary must know that it is false when he presents it to the issuer. *See* J. Dolan, *The Law of Letters of Credit* ¶ 7.04[3] (2d

ed. 1991) (knowledge transforms an erroneous document into a fraudulent one).

The precise application of the "fraud in the transaction" exception to payment is highly debated. Some commentators believe that the provision only allows nonpayment when the alleged fraud is found in the credit transaction. Most courts, however, hold that the provision applies to any alleged fraud in the underlying agreement. *See generally Id.* (citing cases and commentaries).

The First Circuit in *Itek Corp. v. First National Bank of Boston*, 730 F.2d 19 (1st Cir.1984), which was decided under Massachusetts law, held that the "fraud in the transaction" provision referred to the underlying transaction. The First Circuit affirmed the District Court's decision enjoining an issuing bank from paying a beneficiary because there was no "plausible or colorable basis under the contract [for the beneficiary] to call for payment." 730 F.2d at 25. *Cf. Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986) (overturning the issuance of an injunction when a plaintiff had a "satisfactory remedy at law" to recover its claimed money).

*Ground Air Transfer, Inc. v. Westates Airlines, Inc.*, 899 F.2d 1269 (1st Cir.1990), indicates that the First Circuit, at least, will still analyze the underlying transaction for fraud, but only in a very restrained manner. In that case, the First Circuit reversed the District Court's injunction of an issuer's payment, after concluding that the circumstances indicated that the beneficiary had a "colorable" claim under the contract for calling on the letter.[3] It held that Section 5–114(2) of the Uniform Commercial Code

> concerns 'fraud' so serious as to make it obviously pointless and unjust to permit the beneficiary to obtain the money. Where the circumstances *'plainly'* show that the underlying contract forbids the beneficiary to call a letter of credit, ...;

---

**3.** The applicable law in the *Ground Air Transfer* case was that of California. Nevertheless, the First Circuit relied on *Itek* and ordinary principles of commercial law in construing Section 5–114(2) of the Uniform Commercial Code, a provision similar to Chapter 106, Section 5–114(2). The Court noted that California law, which does not contain a provision similar to Section 5–114(2), is "even more hostile" to enjoining payment. 899 F.2d at 1274.

where they show that the contract deprives the beneficiary of even a *'colorable'* right to do so, ...; where the contract and circumstances reveal that the beneficiary's demand for payment has 'absolutely no basis in fact' ...; where the beneficiary's conduct has ' " 'so vitiated the entire transaction that the legitimate purpose of the independence of the issuer's obligation would no longer be served' " ' ...; *then* a court may enjoin payment.

899 F.2d at 1273 (citations omitted) (emphasis in original).

■ Thus, Massachusetts law permits, as a narrow exception to the independence principle, an inquiry into the underlying contract to search for fraud. Eastland contends that it is not alleging fraud in the underlying transaction, only that Massbank submitted a fraudulent document when it submitted its drafts. Eastland's rationale for urging this distinction on the Court obviously is to avoid application of the stringent standard enunciated in *Ground Air Transfer.*

■ Indeed, the factual circumstances and the terms of the underlying loan agreement clearly justify Massbank's attempted calls on the letter. The uncontested facts that Lane Homes was in default and that Massbank subsequently spent in excess of $300,000.00 to complete units gave it ample reason to call on the letter. Therefore, *Ground Air Transfer* does not support Eastland's refusal to pay here. That case would only permit nonpayment in this situation if Massbank *falsely* claimed that Lane Homes was in default or if Massbank certified that $216,500.00 was needed to cure a default when, in reality, it knew that less money would remedy the situation.

In short, only the "fraudulent document" provision can have any application in this case. However, it is clear that in applying those principles, Eastland wrongfully dishonored the drafts.

Massbank simply did not submit a false statement when it certified that $216,-500.00 would "cure" Lane Homes's default. The definition of cure is "to restore to health, soundness or normality; to bring

about recovery from." It is clear that $216,500.00 will be of assistance to Massbank in bringing about recovery from Lane Homes's default. Furthermore, Massbank did not call on the letter of credit in an effort to deceive Eastland. It called on the letter of credit to secure prompt payment of money needed to bring about recovery from Lane Homes's default. In so doing it was exercising its legal rights through a process designed especially for that purpose. *Itek,* 730 F.2d at 24 ("The very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms in the letter itself....").

■ Eastland's position with respect to the second call is plainly unreasonable. Eastland claims that Massbank fraudulently misrepresented a fact despite Massbank's inclusion of clarifying language within the same document. Having concluded that Massbank's certification that $216,500.00 will "cure such default" was not fraudulent, the Court believes that Massbank's use of language in addition to that required by the letter was permissible. *See Flagship Cruises, Ltd. v. New England Merchants Nat'l Bank,* 569 F.2d 699, 705 (1st Cir.1978) ("[A] variance between documents specified and documents submitted is not fatal if there is *no* possibility that the documents could mislead the paying bank to its detriment.") (emphasis in original).

■ Eastland contends that the phrase "cure such default" required Massbank to certify that the amount of the draft would complete the entire condominium project. Furthermore, it argues that it issued the letter of credit intending it to be used only to cover the cost of finishing touches or punchlist items. Yet, the letter simply does not require Massbank to certify that the amount called for will complete the project; only that the amount will "cure such default." This Court can not countenance an issuer's effort to unveil its secret intent for issuing a letter of credit when that alleged intent serves only to

defeat the legitimate business reasons for using the letter of credit in the first place.

Furthermore, Eastland's strained interpretation of the letter of credit would lead to ridiculous results. At the extreme it means that if Lane Homes's default amounted to $216,500.01, and Massbank submitted the same certification at issue here, then that certification would be a fraudulent document entitling Eastland not to pay. The certification would be fraudulent, according to Eastland's argument, because the amount available under the letter could not cure the entire amount of the default. At the hearing on these motions, Eastland's counsel argued that Massbank would have to itself pay any amount over $216,500.00 before Massbank could truthfully certify that $216,500.00 was the sum required to cure the default. That would be elevating form over substance. Massbank has incurred a loss greater than $216,500.00 due to the default of Lane Homes. Therefore, common sense dictates that it is entitled to recover the maximum amount available under the letter, $216,-500.00.

Therefore, Massbank's motion for summary judgment as to Eastland's amended complaint must be granted. Eastland had no justification for not making payment. In addition, Massbank is entitled to summary judgment on counts one and two of its counterclaims. Massbank is entitled to the face amount of the draft ($216,500.00) plus twelve percent per annum interest calculated from June 19, 1990, the date of the first wrongful dishonor to the date of the judgment. Mass.Gen.L. ch. 106, § 5–115(1).

### B. *Chapter 93A*

■ Massbank's fourth counterclaim alleges that Eastland has violated Chapter 93A of the Massachusetts General Laws. Chapter 93A declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass.Gen.L. ch. 93A, § 2(a). Massbank alleges that Eastland's refusals to honor the two drafts and its institution of this suit constitute "unfair and deceptive" activity.

There is no need to delve deeply into this contention. Massbank clearly is not entitled to judgment as a matter of law on its Chapter 93A claim. As a preliminary matter, this Court, sitting in diversity must apply the substantive law of Rhode Island, including Rhode Island's choice of law principles. This requirement is not diminished by the letter of credit's requirement that it be governed by the laws of Massachusetts. That provision does not alter this Court's duty to apply Rhode Island's choice of law principles to non-contractual issues in dispute. Rhode Island does not have a counterpart to Massachusetts's Chapter 93A provision, and the Court believes the instant facts would warrant application of Rhode Island law.

■ Furthermore, even if Massachusetts law were applicable on the issue, Chapter 93A, by its own terms, would not apply. Section 11 states that no Chapter 93 action shall be maintained unless the alleged unfair or deceptive act "occurred *primarily and substantially* within the commonwealth." Mass.Gen.L. ch. 93A, § 11 (emphasis added). Both of Massbank's calls were made in Rhode Island and this suit was instituted in Rhode Island; *none* of the allegedly unfair or deceptive acts occurred in Massachusetts. *See Val Leasing, Inc. v. Hutson,* 674 F.Supp. 53, 57 (D.Mass.1987).

Therefore, Massbank clearly is not entitled to summary judgment on its Chapter 93A counterclaim. In fact, the absence of disputed facts and Eastland's clear entitlement to judgment as a matter of law on the issue makes entry of summary judgment appropriate in Eastland's favor. Unfortunately, Eastland has not requested summary judgment. Nevertheless, this Court has the power to enter judgment for Eastland *sua sponte. See generally* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720 (1983) (and cases cited therein). This power should be exercised here. Further delay in this action would only serve to keep Massbank

**36**

separated from its money, defeating the very purpose of the letter of credit.

### C. *Breach of Contract*

 Although Massbank has moved for summary judgment on all of its counterclaims, neither party has briefed or argued in support of or in opposition to Massbank's third counterclaim, which alleges breach of contract. In fact, Eastland did not file a cross motion for summary judgment on that count even though it is clearly entitled to summary disposition. Massbank's remedy for Eastland's wrongful dishonor is found in Section 5–115(1), not in principles of contract law. *See Eastland Bank*, 749 F.Supp. at 438 ("[A] letter of credit is not a contract."). Therefore, the Court denies Massbank's motion for summary judgment and also orders entry of judgment on count three of Massbank's counterclaims in Eastland's favor.

### III. CONCLUSION

In sum, Eastland wrongfully refused to honor Massbank's two drafts on the letter of credit. Therefore, Massbank's motion for summary judgment on Eastland's amended complaint must be granted. In addition, Massbank's motions for summary judgment on counts one and two of its counterclaims must be granted. Judgment shall be entered in Massbank's favor in the amount of $216,500.00 plus interest calculated at twelve percent per annum from June 19, 1990 to this date. Massbank's motions for summary judgment on counts three and four of its counterclaims are denied, and summary judgment is granted to Eastland on those two counts. The Clerk will enter the judgments as indicated forthwith.

*It is so Ordered.*